DECISION AND JOURNAL ENTRY
{¶ 1} Appellant Ella Morris appeals from the Summit County Court of Common Pleas, Juvenile Division, which awarded legal custody of her now six-year-old child, S.J., to the child's godmother, Vivian Powers. We reverse.
 I. {¶ 2} S.J. was born on June 23, 1999. Ms. Morris and Larnell Jones are her biological parents. Although unwed, Ms. Morris and Mr. Jones lived together with S.J. On March 6, 2003, Ms. Morris brought S.J. to Ms. Powers' home and asked her to care for the three-year-old girl while she was away. Ms. Powers agreed and Ms. Morris left for Minnesota to be with a man she had met on the internet, one Kenneth Lehman. When Ms. Morris had not returned by March 15, 2003, Ms. Powers notified the Children Services Board (CSB). CSB placed S.J. with Ms. Powers while they attempted to reconcile the situation.
 {¶ 3} Eventually, CSB brought the case to juvenile court, which declared S.J. dependent and a legal custody proceeding ensued. Ms. Morris, Mr. Jones and CSB each sought custody, although CSB urged that custody be awarded to Ms. Powers. Following a two-part evidentiary hearing, the magistrate recommended that legal custody be awarded to Ms. Powers. The trial court agreed, and after ruling on the parties' objections, awarded legal custody to Ms. Powers. Ms. Morris timely appealed, asserting four assignments of error for review. We address the third assignment of error first, as it is dispositive of the outcome.
 II. A. Third Assignment of Error
"THE TRIAL COURT ERRED IN UPHOLDING THE MAGISTRATE'S ORDER WHERE THE MAGISTRATE REFUSED TO ALLOW APPELLANT TO INTRODUCE THE ENTIRE INTERSTATE COMPACT REPORT INTO THE RECORD IN THIS CASE PURSUANT TO EVIDENCE RULE 106."
 {¶ 4} Ms. Morris alleges that the trial court improperly excluded admission of an entire document after portions of it had been introduced out of context. Ms. Morris contends that she was prejudiced by this exclusion, in that the guardian ad litem testified to excerpts from this document, the finder-of-fact relied on those excerpts, and the remainder of the document was necessary to put the excerpts in context; to supplement, explain or dispute those excerpts. We agree.
 {¶ 5} Evid. R. 106 is the "rule of completeness" and is intended to avoid the misleading impressions that occur when statements are taken out of context. State v. Barna (Nov. 3, 1993), 9th Dist. No. 93CA005564, *9. This rule states:
"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it." Evid. R. 106.
Nothing in this rule, its advisory notes or commentary suggests that it is available only to a defendant. We know of no case law that would support such a position.
 {¶ 6} In the present case, a magistrate conducted a dispositional hearing, pursuant to Juv. R. 34, to determine legal custody of S.J. Procedurally, this was a typical evidentiary hearing:[1] the State presented its case and then rested, Ms. Morris presented her case and rested, Mr. Jones presented his case and rested, and finally, the court called the guardian ad litem to testify as the court's witness.
 {¶ 7} During her testimony, the guardian ad litem cited a Minnesota Human Services Interstate Compact Report (hereinafter the "Report"), and admittedly relied on the findings in that Report. The guardian ad litem testified:
"The Interstate administrator of Ramsey County, Minnesota refused a 90-day trial placement and denied permanent placement for the following reasons: The first being serious mental health issues of [Ms. Morris, Mr. Lehman, and Mr. Lehman's 16-year-old son].
"* * * [Four paragraphs elaborate on these mental health issues.]
"Housing was an issue. The workers in Minnesota felt the issue of privacy, with two bedrooms and the adults sleeping on a sleeper sofa in the living room, that this presented an issue of privacy. However the couple recently extended their lease on this apartment * * *.
"* * *
"I am not qualified nor capable sight unseen of overriding the denial of permanent placement as issued by Ramsey County [Minnesota] CSB. I do not feel qualified to do that."
 {¶ 8} After questioning the guardian ad litem, Ms. Morris sought to introduce certain documents into evidence, including the complete version of the Report. She cited Juv.R 34 and Evid. R. 106 as authority. However, the magistrate refused to admit the Report, stating: "I will decline to admit these documents into evidence given the fact then that [Ms. Morris] has already rested [her case]."
 {¶ 9} Before proceeding with our analysis, we pause to brand this particular ruling as clearly erroneous. Under such a view, Evid. R. 106 would be available only to defendants because the State (in a criminal case) or a plaintiff (in a civil case) will always rest its case before the defendant puts on any evidence. Therefore, the State or plaintiff would forever be prohibited from invoking Evid. R. 106. This is an unreasonable limitation. The proper view, in accord with fairness, sound legal reasoning and a plain reading of both the rule and commentary, is that Evid. R. 106 is equally available to all parties to the action regardless of the order in which they present their case. It is just as available to the State as it is to the criminal defendant; it is as available to the plaintiff as it is to the civil defendant; and it is equally available to every party in a multi-party case such as this one. As such, Ms. Morris properly invoked Evid. R. 106 and the magistrate's refusal on the basis that she had already rested her case was clearly erroneous.
 {¶ 10} However, the trial court ultimately upheld the magistrate's ruling. As certain ancillary issues will warrant analysis below, it is worth following the course of this ruling. Foremost, it is evident that the magistrate's decision relied on the recitation from the Report, as the magistrate stated:
"An interstate compact was completed through officials in the state of Minnesota. That interstate compact raises concerns with regard to the mother's mental health issues, the mother's paramour's mental health issues, and the paramour's child's mental health issues. There are also concerns with regard to income issues and a domestic violence history that the mother has experienced with the father and with other men. The mother is diagnosed with major depression and post traumatic stress disorder. She also exhibits some symptoms of bipolar disorder. The interstate compact recommends not placing the child in the Legal Custody of the mother."
Under "Findings of Fact and Law," the magistrate's decision stated:
"Given the mother's history even to this date of abandonment of this child, this court finds that it is not in the best interest of the child to be placed into her legal custody. The mother's mental health issues as illustrated by the Interstate Compact report from the state of Minnesota also served to exacerbate the situation."
The magistrate then ordered that legal custody be awarded to Ms. Powers.
 {¶ 11} The trial court issued a preliminary order implementing the magistrate's order and ultimately overruled the parties' objections and adopted the magistrate's decision in full. In overruling Ms. Morris' objections to the magistrate's decision, the trial court explained its reasoning, which is reproduced below — but separated into four parts for ease of reference:
[1.] "[Ms. Morris] challenges the magistrate's refusal to allow the entire Report to be admitted into evidence at the dispositional hearing. It is true that the magistrate did, in fact, decline to admit the Report. The reason for refusing to admit the Report, however, was that it was not offered into evidence until after [Ms. Morris] had already rested her case. [Ms. Morris] waited until cross-examination of the Child's guardian ad litem, the very end of the hearing, to seek admission of the entire Report. Counsel for CSB objected to the admission of the Report, and that objection was properly sustained.
[2.] "Interestingly, at an earlier point in the hearing, when CSB was willing to stipulate to the Report's admission, [Ms. Morris] prevented the Report's admission by insisting that its admission be conditioned on the admission of another document. At that earlier point in the hearing, [Ms. Morris] and CSB could not agree to a stipulated admission of both documents, so neither was admitted.
[3.] "Even though [Ms. Morris] argues that she was entitled to admission of the entire Report in evidence, she also argues that its conclusions were `so flawed' that it `should have been totally disregarded in the decision making process.'
[4.] "In any event, significant portions of the Report, both favorable and unfavorable to each party, were openly discussed throughout the hearing, and [Ms. Morris] has not sufficiently demonstrated that admission of the Report would have changed, in any way, the outcome of the dispositional hearing." (Paragraph breaks and numbering added for ease of reference.)
 {¶ 12} Regarding paragraph [1.], we disagree that CSB's objection was properly sustained, for the reasons set forth in ¶ 9, supra: that is, Evid. R. 106 is not so limited. Moreover, this was not even a basis for CSB's objection, which was:
"[The State/CSB]: Well, Your Honor, because these exhibits, A, were not part of counsel's case, B, there was no one here to authenticate them, [and, C] they are not certified records that were received, I do have an objection to their admissibility.
"[The Magistrate]: Okay. I will decline to admit these documents into evidence given the fact then that the mother has already rested."
Although the magistrate did not address the State's actual bases for objection, it is worth noting that this was a dispositional hearing, governed by Juv. R. 34(B):
"(B) Hearing procedure. — The hearing shall be conducted in the following manner:
"* * *
"(2) * * * [T]he court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence;
"(3) * * * Any party may offer evidence supplementing, explaining, or disputing any information contained in the social history or other reports that may be used by the court in determining disposition."
Thus, we do not agree that the objection was properly sustained, nor do we conclude that the evidence was properly excluded on other grounds.[2]
 {¶ 13} Regarding paragraph [2.], we find that this adds nothing to a proper analysis of the issue at hand and appears to be mere after the fact rationalization. Ms. Morris' failure or unwillingness to stipulate to the admissibility of the Report at an earlier time in the proceeding does not affect the document's admissibility under Evid. R. 106 following the guardian ad litem's testimony. Also, trial counsel retains discretion over tactical decisions, such as stipulation as to authenticity or the introduction of rebuttal evidence. Moreover, it would appear that this document was otherwise admissible pursuant to Juv. R. 34(B), and Ms. Morris held no power to prevent its admission, via coerced stipulation or otherwise.
 {¶ 14} Regarding paragraph [3.], we fail to see the contradiction implied by the trial court. Essentially, Ms. Morris argues that the Report, read in its entirety, is so patently flawed as to render it incredible, which therefore undermines the reliability of the excerpts offered at trial (and ultimately relied upon by the magistrate in his decision). Ms. Morris' premise is entirely consistent with her attempt to either exclude it entirely or else admit it entirely. Once again, we question whether this isn't mere after the fact rationalization.
 {¶ 15} Regarding paragraph [4.], however, we are compelled to examine this issue from a new perspective — and in so doing address an alleged flaw in Ms. Morris' appeal. Under the trial court's view, Ms. Morris failed to demonstrate prejudice — that is, she "has not sufficiently demonstrated that admission of the Report would have changed, in any way, the outcome of the dispositional hearing." This may be true. However, we must recognize that this was a dispositional hearing at which legal custody of her child was awarded to someone else. In context ofpermanent custody disposition, this Court has stated on numerous occasions: "Since permanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case,' parents must be afforded every procedural and substantive protection the law allows." In re Woodall (June 13, 2001), 9th Dist. Nos. 20346 20436, *52, citing In re Hayes (1997), 79 Ohio St. 3d 46, 48. E.g., also, In re M.B., 9th Dist. No. 21760, 2004-Ohio-597, at ¶ 6, citing In re Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, at ¶ 14; In reL.A., 9th Dist. No. 21531, 2003-Ohio-4790, at ¶ 41; In re A.D.,
9th Dist. No. 02CA008090, 2002-Ohio-6032 at ¶ 9; In re Pittman, 9th Dist. No. 20894, 2002-Ohio-2208. While legal and permanent custody are admittedly different things, we find them sufficiently analogous to apply a tolerant view of prejudice, and so afford the child's parents the procedural and substantive protections available under the law. We also note the United States Supreme Court's view on Fed.R.Evid. 106 as it relates to relevance:
"We take this to be a reaffirmation of the obvious: that when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is ipso facto relevant and therefore admissible under Rules 401 and 402. * * * The District Court's refusal to admit the proffered completion evidence was a clear abuse of discretion." (Internal citations omitted.) Beech Aircraft Corp. v.Rainey (1988), 488 U.S. 153, 172, 102 L.Ed.2d 445.
As the magistrate, and subsequently the trial court, explicitly relied on the excerpts from the Report in a manner that was directly adverse to Ms. Morris, we find that the remaining portions were ipso facto relevant, particularly as analyzed under Juv. R. 34(B). Furthermore, we find that under these circumstances the threshold for prejudice in a legal custody disposition hearing has been breached and Ms. Morris' inability to demonstrate further prejudice is not fatal.
 {¶ 16} Appellee also points out that Ms. Morris failed to have the Report marked and made part of the record, an error which is ordinarily fatal. See, e.g., State v. McCowan, 9th Dist. No. 02CA008124, 2003-Ohio-1797; State v. Miller (June 7, 2000), 9th Dist. No. 19810. This is because we presume regularity when the record is incomplete, such that we cannot and will not find error in the trial court's reading of a document that is not before us. McCowan at ¶ 6; Miller at *4-5. In the present case, however, the contents of the Report are not determinative of the issue because we find error before reaching that point in the analysis.
 {¶ 17} We are reminded that Evid. R. 106 uses the peculiar language "an adverse party may require." These are not words of discretion. We understand this to mean that the court has a minimal obligation to undertake a reasonable review of the document in question, with the presumption that this evidence is admissible unless the court finds the remaining portions of the document to be irrelevant, immaterial, or otherwise inadmissible. In the present case, the magistrate (and later the trial court) undertook no such review and made no such determination. The magistrate himself never looked at the rest of the Report — that itself was error — and therefore we are not called upon to consider either the contents of the Report or the magistrate's reading of it. Under these circumstances, the failure to ensure that the Report was made part of the record is not fatal, in that an obvious error exists regardless of the contents. This assignment of error is sustained.
 B. First Assignment of Error
"THE TRIAL COURT ERRED IN UPHOLDING THE MAGISTRATE'S ORDER WHERE THE MAGISTRATE KNEW THE MOTHER HAD A SERIOUS MENTAL ILLNESS, A BIPOLAR DISORDER, AND A GUARDIAN AD LITEM (GAL) HAD TO BE APPOINTED BEFORE THE CASE COULD GO FORWARD."
 Second Assignment of Error
"THE TRIAL COURT ERRED IN UPHOLDING THE MAGISTRATE'S ORDER WHERE THE MAGISTRATE AND THE CHILDREN SERVICES BOARD (CSB) WITNESS RELIED HEAVILY ON AN INTERSTATE COMPACT REPORT WHERE THE REPORT WAS DEEPLY FLAWED, INACCURATE, AND VIOLATIVE OF THE AMERICANS WITH DISABILITIES ACT AND SIMILAR STATUTES PROTECTING HANDICAPPED PEOPLE."
 Fourth Assignment of Error
"THE TRIAL COURT ABUSED ITS DISCRETION IN UPHOLDING THE MAGISTRATE'S ORDER AWARDING CUSTODY OF THE CHILD TO A NON-RELATIVE, AS THIS WAS NOT IN THE CHILD'S BEST INTEREST."
 {¶ 18} In light of our disposition of the third assignment of error, we decline to address these assignments of error as they have been rendered moot. See App. R. 12(A)(1)(c).
 III. {¶ 19} Ms. Morris' third assignment of error is sustained. The other assignments of error are not addressed. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause is remanded for further proceedings consistent with this decision.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellee.
Exceptions.
Slaby, P.J. Whitmore, J. concur
[1] Although not contested on appeal and seemingly immaterial to the outcome, it appears remarkable that this hearing was stopped midway and continued for six weeks before it was resumed. No explanation was provided. The hearing began on June 18, 2004, on which day the parties offered opening statements, the State presented its case, and Ms. Morris presented her case. At the end of that day, the hearing was adjourned until August 4, 2004, whereupon Mr. Jones presented his case, the court called the guardian ad litem, and then certain discussions were had regarding the admissibility of evidence. There were no closing statements. Ms. Morris was present on June 18, 2004, but was absent on August 4, 2004, with an explanation from her attorney that she could not afford to travel from Minnesota. None of the other parties protested her absence.
[2] As an aside, we note that the State/CSB, having originally introduced the Report and corresponding testimony thereon, implicitly waived a challenge to the authenticity of that Report. See Fletcher v.Scarantine (Dec. 31, 1996), 11th Dist. No. 95-T-5359, *13. Thus, the decision in this case is limited accordingly.