DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Ella M., appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted legal custody of her minor child, S.J., to Vivian Powers. This Court affirms.
 I. {¶ 2} S.J. was born on June 23, 1999. Ella M. ("Mother") and Larnell J. ("Father") are her biological parents. Although unwed, Mother and Father lived together with S.J. Mother has described her relationship with Father as hostile, but also said he was a loving and caring father to S.J. On March 6, 2003, Mother brought S.J. to the home of a friend, Vivian Powers and asked her to care for the three-year-old girl while she was away.[1] Powers agreed and Mother left for Minnesota to be with a man she had met on the internet, one Kenneth Lehman. Mother claimed she was going to decide whether his home was an appropriate place to bring her daughter.
 {¶ 3} The expected length of Mother's trip was a matter of some dispute. Powers testified that Mother said she would be gone for one week, whereas Mother claimed that she told Powers she would be gone for two weeks.
 {¶ 4} The present action was initiated by a complaint, filed on March 21, 2003, 15 days after the child was left with Powers, alleging neglect and dependency and seeking temporary custody of S.J. The complaint was based on a referral to the agency and alleged that Mother took the child to Powers' home and left town with a man she had met on the internet. It further alleged that Father indicated that Mother said she was never coming back. The complaint finally asserted that Mother had previously surrendered custody of her two older children to relatives, following a neglect referral.
 {¶ 5} Emergency temporary custody was granted to CSB at the shelter care hearing. On June 4, 2003, the trial court adjudicated S.J. to be dependent and placed the child in the temporary custody of CSB. At the same time, the trial court adopted a case plan which required Mother (1) to address the child's physical, emotional, and medical needs on a consistent basis; and (2) to address her own mental health issues, particularly in terms of their impact on parenting, housing, and employment. On November 18, 2003, the trial court appointed new counsel for Mother, due to a claimed breakdown in the attorney-client relationship.
 {¶ 6} On June 10, 2004, more than a year after the adjudicatory decision, Mother's new attorney moved to vacate the finding of dependency on the grounds that Mother was not personally present at the adjudicatory hearing and did not authorize her attorney to enter into a stipulation of facts. The magistrate denied the motion to vacate as untimely. Thereafter, Mother filed objections, and, on August 24, 2004, the trial court found the objections to be not well taken and adopted the decision of the magistrate. The trial judge agreed that the motion was not filed within a reasonable time and specifically noted that Mother's new counsel had been appointed nearly seven months before the motion to vacate was filed.
 {¶ 7} Following a hearing held on competing motions for legal custody, the trial court granted CSB's motion to award legal custody to Powers. Mother appealed from that order. On review, this Court reversed the decision of the trial court because it had failed to admit a complete version of the interstate compact report into evidence after portions had already been admitted. In re S.J., 9th Dist. No. 22554,2005-Ohio-4945, at ¶ 17.
 {¶ 8} On remand, the trial court reheard the question of legal custody of the child. At the beginning of that hearing, Father expressed agreement with CSB's request to grant legal custody to Powers. Mother proceeded to seek custody in her own right, and CSB sought an order granting legal custody to Powers. Following the hearing, the trial court granted CSB's motion to place the child in the legal custody of Powers and denied Mother's motion for custody. In so ruling, the trial court concluded that it was in S.J.'s best interest to be placed in the legal custody of Powers. Mother filed a timely appeal from that decision and assigned three errors for review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT'S DECISION MUST BE REVERSED BECAUSE MOTHER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT ADJUDICATION THAT PREJUDICED HER IN THE FINAL OUTCOME."
 {¶ 9} In her first assignment of error, Mother asserts ineffective assistance of her trial counsel at the adjudicatory hearing which resulted in a finding that S.J. was a dependent child. Specifically, she asserts that her counsel improperly stipulated to the facts of the complaint without her participation in that decision and without her presence at the hearing. Upon review, we find Mother's argument to be without merit.
 {¶ 10} An adjudication by a juvenile court that a child is neglected or dependent followed by a dispositional award of temporary custody to a public children service agency constitutes a final order and is appealable to the court of appeals. In re Murray (1990),52 Ohio St.3d 155, syllabus. Generally, a failure to file a timely notice of appeal from a final, appealable order will deprive the court of appeals of jurisdiction to hear the appeal. See App.R. 4(A) and Bosco v. City ofEuclid (1974), 38 Ohio App.2d 40, 42-43.
 {¶ 11} Here, the alleged error involves a claim of ineffective assistance of counsel at a trial hearing, and that same attorney "cannot realistically be expected to argue his own incompetence." State v.Cole (1982), 2 Ohio St.3d 112, 114, fn. 1. Therefore, Mother's first attorney would not have been expected to file objections to the initial decision of the magistrate or to take an appeal from the June 2003 adjudication of dependency followed by the disposition of temporary custody to CSB.
 {¶ 12} In November 2003, however, Mother's first attorney withdrew from representation and new counsel was appointed for her. When the court entered a dispositional order of legal custody on February 8, 2005, new counsel filed a direct appeal. In that appeal, no claim of ineffective assistance of counsel during the adjudicatory hearing was raised by counsel or considered by this Court. See In re S.J.,2005-Ohio-4945. As noted above, this Court reversed the decision of the trial court on an evidentiary issue, and the question of the final disposition of S.J. was remanded back to the trial court. On March 29, 2006, the trial court once again granted legal custody of the child to Powers, and the present appeal was taken from that order.
 {¶ 13} Now in the instant appeal, Mother has assigned the alleged ineffective assistance of her first attorney at the adjudicatory hearing conducted in May 2003 as error. We conclude that any present consideration by this Court of that issue is barred by the doctrine of res judicata. This is so because the issue could have been raised in Mother's earlier appeal, but was not. See In re S.J., 2005-Ohio-4945.
 {¶ 14} The Ohio Supreme Court has recently reaffirmed "its long-standing precedent that any issue that could have been raised on direct appeal and was not is res judicata and not subject to review in subsequent proceedings." State v. Saxon, 109 Ohio St.3d 176,2006-Ohio-1245, at ¶ 16. See, also, Grava v. Parkman Twp. (1995),73 Ohio St.3d 379, syllabus. Furthermore, the Supreme Court has specifically explained, "Where an argument could have been raised on an initial appeal, res judicata dictates that it is inappropriate to consider that same argument on a second appeal following remand."State v. D'Ambrosio (1995), 73 Ohio St.3d 141, 143. Accord State v.Gillard (1997), 78 Ohio St.3d 548, 549 (on appeal after remand, "new issues" are barred by the doctrine of res judicata). "Res judicata promotes the principle of finality of judgments by requiring plaintiffs to present every possible ground for relief in the first action."Kirkhart v. Kieper, 101 Ohio St.3d 377, 2004-Ohio-1496, at ¶ 5.
 {¶ 15} As applied to this case, these principles indicate that since Mother could have included a claim regarding the alleged ineffectiveness in her previous appeal to this Court, Mother is precluded from asserting that claim in her present appeal.[2] See Saxon, 2006-Ohio-1245, at ¶ 16. Accordingly, Mother's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT'S DECISION MUST BE REVERSED BECAUSE OF PLAIN ERROR WHERE THE TRIAL COURT DID NOT [FOLLOW] THE [REASONING] OF THE SUPREME COURT AND BECAUSE OF THE [TRIAL COURT'S] REFUSAL TO [GRANT] EITHER OF MOTHER'S TWO MOTIONS TO VACATE THE JUDGMENT ADJUDICATING THE CHILD `DEPENDENT[.]'"
 {¶ 16} In her second assignment of error, Mother challenges the trial court's finding that S.J. was a dependent child as well as the trial court's failure to vacate that adjudication. For the reasons which follow, we find the assignment of error to be without merit.
 {¶ 17} First, Mother claims error as a matter of law by the trial court when it entered a finding of dependency, arguing that a voluntary placement initiated by a parent with an appropriate caregiver precludes a child from being deemed dependent. To the extent that Mother now argues that the trial court's finding of dependency is contrary to law, such argument must be overruled. For the reasons set forth above in this court's analysis of the first assignment of error, that claim is barred by res judicata. The claim should have been raised in the prior appeal, but was not. See In re S.J., 2005-Ohio-4945. Present consideration of the argument is, therefore, barred by the doctrine of res judicata.
 {¶ 18} Second, to the extent that Mother attempts to raise the same argument by challenging the trial court's denial of her motion to vacate,[3] we also find the argument to be not well taken. Mother contends that her motion to vacate was timely and that she presented a meritorious defense in support of her motion to vacate, that being her assertion that the evidence did not support a finding of dependency. See Brief of Appellant, at 18.
 {¶ 19} The question of whether a motion for relief from judgment pursuant to Civ.R. 60(B) should be granted is addressed to the sound discretion of the trial court. Rose Chevrolet, Inc. v. Adams (1988),36 Ohio St.3d 17, 20. Therefore, our review is limited to whether the trial court abused its discretion. Strack v. Pelton (1994), 70 Ohio St.3d 172,174. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 20} A party may challenge a judgment under Civ.R. 60(B) by showing: (1) the party has a meritorious defense or claim; (2) a circumstance arises under Civ.R. 60(B)(1)-(5); and (3) the motion is made within a reasonable time. GTE Automatic Elec., Inc. v. ARC Industries, Inc.
(1976), 47 Ohio St.2d 146, paragraph two of the syllabus. If a party fails to prove any of these three elements, then the trial court must deny the motion. Rose Chevrolet, Inc., 36 Ohio St.3d at 20.
 {¶ 21} The circumstances under Civ.R. 60(B)(1)-(5) that would allow a court to grant a motion to vacate are:
 "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud * * *, misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from judgment."
 {¶ 22} The trial court found that Mother's motion to vacate was not filed within a reasonable time, and it does not appear to this court that the trial court abused its discretion is so finding. In addition, Mother has failed to demonstrate that she was entitled to relief under any of the grounds set forth in Civ.R. 60(B).
 {¶ 23} Mother's argument relies upon a claim that the trial court erred in finding the child dependent. Mother cites to State ex rel.Gyurcsik v. Angelotta (1977), 50 Ohio St.2d 345 in asserting that Civ.R. 60(B)(5) justifies relief from "court errors and omissions" and claims that the allegedly erroneous finding of dependency comes within the meaning of this section. Id. at 347. But the Gyurcsik court's explanatory reference to 15 A.L.R.Fed 243-249, Section 12 makes clear that such "errors or omissions" in the judicial process that are the appropriate subject of Civ.R. 60(B)(5) are distinct from an "erroneous judgment" and that an "erroneous judgment" will not justify relief under this catch-all provision. See Annotation (1973), 15 A.L.R.Fed 243-249, Section 12.
 {¶ 24} Mother's Civ.R. 60(B) motion was nothing more than a challenge to the legal correctness of the trial court's original adjudication of dependency. Such a challenge should have been raised on appeal, but Mother failed to do so. See State ex rel. Elyria v. Trubey (1983),24 Ohio App.3d 44, 48, citing Blasco v. Mislik (1982), 69 Ohio St.2d 684,686. It is well established that a motion for relief from judgment under Civ.R. 60(B) is not a substitute for appeal. Doe v. Trumbull Cty.Children Services Bd. (1986), 28 Ohio St.3d 128, 131. Errors that could have been corrected by a timely appeal cannot be the predicate for a motion for relief from judgment. Ward v. Hengle (1999),134 Ohio App.3d 347, 350. See, also, Yakubik v. Yakubik (Mar. 29, 2000), 9th Dist. No. 19587.
 {¶ 25} Accordingly, Mother's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT'S DECISION MUST BE REVERSED BECAUSE THE GRANTING OF LEGAL CUSTODY TO A NON-RELATIVE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT IN THE CHILD'S BEST INTEREST."
 {¶ 26} In her third assignment of error, Mother contends that the weight of the evidence does not support a finding that legal custody to Powers was in the child's best interest. We find the argument to be without merit.
 {¶ 27} Mother presents three separate arguments in support of her contention. First, she once again asserts that the finding of dependency is erroneous, and claims that absent a proper finding of dependency, a disposition of legal custody to Powers is inappropriate. As explained in the discussion under the first assignment of error, the adjudication of dependency is res judicata and may not be relitigated now.
 {¶ 28} Next, Mother argues that the "primary issue regarding best interest of the child relates to whether the parent has substantially remedied the conditions that caused the child's removal from the home" and further argues that she has remedied the conditions that caused the removal of her child. Brief of Appellant, at 21. In support, Mother cites to In re Heatherly, 9th Dist. No. 20925, 2002-Ohio-3028. That case does not support the proposition that Mother claims it does.
 {¶ 29} Most importantly, Heatherly is a permanent custody case, and does not offer direct guidance on issues related to legal custody. In addition, Heatherly indicates that the matter of "whether the parent has substantially remedied the conditions that caused the child's removal" is related, not to the best interest of the child, but rather to R.C.2151.414(E)(1). Heatherly, 2002-Ohio-3028, at ¶ 21. In the context of permanent custody issues, proof of R.C. 2151.414(E)(1), in turn, is relevant to the "first prong" question of whether a child cannot or should not be returned to a parent, but is not relevant to the "second prong" question of the best interest of the child. See R.C. 2151.414(D) and (E). See, also, Heatherly, 2002-Ohio-3028, at ¶ 13 — ¶ 16. Therefore, this argument is inapposite.
 {¶ 30} Finally, Mother claims that the judgment of the trial court, finding that placing the child in the legal custody of Powers is in her best interest, is against the weight of the evidence. When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001),141 Ohio App.3d 103, 115. "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Alterations sic). Id., citing State v. Thompkins (1997),78 Ohio St. 3d at 387, quoting State v. Martin (1983), 20 Ohio App. 3d 172, 175.
 {¶ 31} As a part of her argument, Mother claims that the trial court should have considered the best interest factors of R.C. 3109.04(F)(1) in addition to the factors set forth in R.C. 2151.414(D) when determining whether legal custody was in the best interest of this child. Specifically, she refers to the existence of "substantial information that [she and the child] have a strong parent-child attachment that is pertinent" to both statutes.
 {¶ 32} This Court has previously observed that the statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, and that the trial court must base its decision on the best interest of the child. In re N.P., 9th Dist. No. 21707,2004-Ohio-110, at ¶ 23. In addition, this Court has indicated that the factors listed in R.C. 2151.414 may provide some guidance in determining whether a grant of legal custody is in the best interest of the children. In re T.A., 9th Dist. No. 22954, 2006-Ohio-4468, at ¶ 17.
 {¶ 33} In urging consideration of the factors in R.C. 3109.04(F)(1), Mother cites to In re Fulton, 12th Dist. No. CA2002-09-236,2003-Ohio-5984, at ¶ 11. The Fulton decision involved a legal custody determination between parents in a neglect situation. In such cases,Fulton indicated that courts should consider the totality of the circumstances, including relevant factors of R.C. 3109.04(F), but also cautioned that there is no statutory mandate that those factors must be expressly considered and balanced together before fashioning an award of custody. Fulton, 2003-Ohio-5984, at ¶ 11. Accord In re Pryor (1993),86 Ohio App.3d 327, 336.
 {¶ 34} In legal custody cases, trial courts should consider all factors relevant to the best interest of the child. Substantial evidence regarding the parent-child relationship was before the trial court in this case, and evidence regarding the parent-child relationship is certainly a significant consideration in any determination of the best interest of the child. The trial court is not obligated to include every piece of evidence which it considered in its judgment entry, however, and there is no indication that the trial court, in this case, failed to consider all factors relevant to the best interest of the child, including evidence regarding the Mother-child relationship.
 {¶ 35} Here, the trial court reported that it considered "all relevant factors" in deciding that it was in the child's best interest to be placed in the legal custody of Powers. The trial judge specifically observed that Mother's visits with S.J. have been appropriate and that Mother has a lovely home in Minnesota. Nevertheless, the court was persuaded by the fact that Mother had visited with her child only seven times in the last three years, and that Mother had made the choice to move to Minnesota and leave her daughter behind. The trial court found, therefore, that Mother had not maintained her bond and her relationship with her daughter. The court also considered the important relationships that S.J. has developed with Powers, who cared for her for three years, her father, her school, her friends, Powers' sister, who S.J. views as a sister, and her paternal relatives.
 {¶ 36} Additional evidence before the trial court further supports the judgment of that court. For example, the record demonstrates that Mother did not visit with her child from June 19, 2004 until November 1, 2005 — nearly one and one-half years. The guardian ad litem estimated that Mother spent less than 24 hours with her child in three years. Mother did make numerous and lengthy telephone calls to her daughter. The frequency of the phone calls varied and was a matter of some dispute, but there does not appear to be any dispute that there were no phone calls on the child's birthday, Thanksgiving, or Christmas in 2005.
 {¶ 37} Mother also testified about the placement of her two older children with relatives. She explained that she voluntarily placed them with separate relatives approximately nine years earlier because she was homeless at that time. The guardian ad litem expressed concern with Mother's decision-making and insight in light of this decision because the relatives each had a history of being abusive.
 {¶ 38} In addition, the record fully supports the finding that Powers has been a loving, nurturing custodian and has devoted herself to this child for three years. Powers even took an 18-month leave of absence from her work so that she could stay home and provide the security and stability that S.J. needed at that time.
 {¶ 39} S.J. was initially concerned that she might be abandoned again and would hide Powers' shoes to prevent Powers from leaving her. According to the guardian ad litem and the CSB caseworker, Powers worked steadily to gain the trust of the child and establish a relationship. Presently, by all accounts, S.J. is a happy, affectionate, inquisitive, expressive and self-confident child. S.J. is doing very well in school, and the CSB caseworker attributed much of that success to the stability and nurturing that Powers has provided to the child. The guardian ad litem testified that S.J. never told her that she wanted to live with her mother, but rather that she was going to live with Powers forever — even after going to college and getting married.
 {¶ 40} S.J. has developed additional relationships with Powers' 14-year-old sister of whom Powers has legal custody, and other members of the Powers family, including Powers' father, grandfather, three aunts, and another relative with two young children. The child has frequent visits with her biological father and regular contact with other paternal relatives.
 {¶ 41} Both the guardian ad litem and the CSB caseworker expressed firm opinions that S.J. should remain with Powers. The guardian ad litem believed it would be devastating to remove S.J. from Powers' home where she has been nurtured, loved and has a wonderful relationship.
 {¶ 42} Upon this record, the weight of the evidence supports the judgment of the trial court, finding that it is in the best interest of the child to be placed in the legal custody of Powers. Mother's third assignment of error is overruled.
 III. {¶ 43} Mother's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J. MOORE, J. CONCUR.
[1] Mother testified that she had asked Vivian Powers, her "very close friend," to be godmother to S.J., explaining that she wanted Powers "to step in" if "something were to happen" to her and the child's father.
[2] In regard to the question of prejudice that must be reached in the proof of any claim of ineffective assistance of counsel, it may be worth noting that, in her appellate brief, Mother states that there was insufficient evidence to support a finding of dependency "[e]venwith the stipulation of [her] first counsel[.]" (Emphasis added.) Brief of Appellant, at 16-17. Thus, it appears that Mother would not have been able to establish that, absent counsel's alleged errors, the result would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
[3] Mother states that she filed two motions to vacate but has not referenced those motions by date or otherwise identified them in her appellate brief as required by App.R. 16. We address Mother's motion to vacate filed on June 10, 2004 and decided by the trial court on August 24, 2004, and the trial court's subsequent order of June 9, 2005, addressing the same issues following a remand from this Court.