<hr/>

**The STATE of Ohio, Appellee,**

v.

**JEFFRIES, Appellant.**

[Cite as *State v. Jeffries,* 182 Ohio App.3d 459, 2009-Ohio-2440.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2005–L–057.

Decided May 22, 2009.

460

462

Charles E. Coulson, Lake County Prosecuting Attorney, and Karen A. Sheppert, Assistant Prosecuting Attorney, for appellee.

R. Paul LaPlante, Lake County Public Defender, and Vanessa R. Clapp, Assistant Public Defender, for appellant.

DIANE V. GRENDELL, Judge.

{¶ 1} Defendant-appellant, Jennifer L. Jeffries, appeals her judgment in the Lake County Court of Common Pleas on a jury verdict convicting her of trafficking in cocaine, in violation of R.C. 2925.03(A)(1) and (C)(4)(a); tampering with evidence, in violation of R.C. 2921.12(A)(1); involuntary manslaughter, with a firearm specification, in violation of R.C. 2903.04(A) and 2941.145; complicity to robbery, with a firearm specification, in violation of R.C. 2923.03(A)(2) and 2941.145; and felony murder, with a firearm specification, in violation of R.C. 2903.02(B) and 2941.145. Jeffries also appeals from the trial court's judgment entry of sentence, sentencing her to a total prison term of 22 years to life in prison. We affirm in part, reverse in part, vacate the judgment entry of sentence, and remand this matter to the trial court for resentencing.

{¶ 2} The following facts are relevant to this appeal: [1]

{¶ 3} On December 4, 2001, Dustin Spaller was found dead in Recreation Park in Painesville, Ohio. An autopsy later revealed that Spaller had died from a gunshot wound. Autopsy evidence also showed that Spaller appeared to have been seriously beaten; he had several blunt-force head wounds, consistent with being hit by the muzzle of a gun.

{¶ 4} A few hours after the body was discovered, a dispatcher from the Lake County Sheriff's Department received a 9–1–1 call from Jeffries claiming that she and her friend, Spaller, were victims of a robbery that had occurred earlier that morning. Following the 9–1–1 call, Officer Robert Sayer, of the Painesville police department, went to Jeffries's home, where she lived with her grandparents and her two children, to investigate her claims. Sayer asked Jeffries to accompany him to the police station to give a victim statement.

---

1. For additional facts, see *State v. Jeffries,* 11th Dist. No. 2005–L–057, 2007-Ohio-3366, 2007 WL 1881314, and *State v. Jeffries,* 119 Ohio St.3d 265, 2008-Ohio-3865, 893 N.E.2d 487.

{¶ 5} As they were preparing to leave, Sayer noticed that Jeffries's vehicle had what appeared to be a blood smear along the passenger door, and blood spots and bloody handprints on various parts of the vehicle. Sayer had the vehicle towed to the Lake County crime lab for analysis.

{¶ 6} When Jeffries arrived at the Painesville police department to complete her victim statement, she told Sayer essentially the same version of events she had told the dispatcher. She stated that she arrived at Tony's Subway Inn, a local bar, around 11:00 p.m. for a few drinks. While at Tony's she ran into Dave Tills, Dustin Spaller, and Brett Cameron. Spaller asked Jeffries if he could buy $100 worth of crack cocaine from her. Jeffries stated that she agreed to take Spaller around town to see if they could find someone willing to sell crack to him. Eventually, Jeffries and Spaller met three men at the Argonne Arms apartment complex who agreed to sell some crack to them if they met at Recreation Park. Upon arriving at Recreation Park, they were ambushed by the three men, and Jeffries was robbed. Jeffries claimed that immediately after Spaller fled his attackers, she got in her car, drove straight home, and notified the police.

{¶ 7} As the investigation continued, a different version of events began to emerge. Spaller's friends, Tills and Cameron, were interviewed. They stated that Spaller was carrying a large amount of cash on the night of Spaller's murder and sometime between midnight and 1:00 a.m., Tills, Cameron, and Spaller went to Tony's to see if they could find someone who would sell them $100 worth of crack.

{¶ 8} While at Tony's, the men encountered Jeffries, who had sold them drugs in the past. Spaller asked Jeffries if she had any crack to sell and produced a large wad of cash from his pocket to show her. Jeffries stated that she would check with others around the bar to see if anyone had any to sell.

{¶ 9} Tills stated that he later saw Jeffries speaking with her estranged husband, Jameson ("Tyrone") Jeffries. Ultimately, Jeffries told the men that they would meet at Recreation Park to consummate the deal. Spaller told Tills and Cameron to wait for him and left Tony's with Jeffries. After Spaller failed to return, Tills and Cameron attempted to reach Jeffries on her cell phone. Over the course of the night, they had several phone conversations with Jeffries. During these conversations, Jeffries gave conflicting accounts of what happened.

{¶ 10} Based upon the conflicting information, Detective Sayer called Jeffries on the afternoon of December 4, 2001, and asked her to return to the police station, where Jeffries recounted her earlier statement without any changes.

{¶ 11} Over the course of a year and a half, the investigation into the death of Spaller continued. Although some evidence was gathered that implicated Tyrone as the assailant, Jeffries herself never corroborated this information.

{¶ 12} In October 2002, Jeffries submitted to a polygraph test, requested on behalf of her defense counsel. The polygraphist took a statement from Jeffries about what had happened on the night of Spaller's death. In the statement, Jeffries claimed she did not have any knowledge of or responsibility for Spaller's murder and identified her husband, Tyrone, as the murderer. The defense later turned this statement over to the prosecutor as part of the cooperation agreement discussed below.

{¶ 13} On May 7, 2003, the prosecutor's office and the public defender's office entered into a cooperation agreement that was to grant Jeffries immunity on all charges related to the murder. The agreement required Jeffries to cooperate with prosecutors and submit to a polygraph administered by an examiner selected by the prosecution to confirm her truthfulness. However, Jeffries subsequently failed the polygraph and fled the jurisdiction.

{¶ 14} Consequently, on July 18, 2003, Jeffries was indicted, by way of secret indictment, on one count of trafficking in cocaine, a felony of the fifth degree (Count 1), and one count of tampering with evidence, a felony of the third degree (Count 2). Additionally, a warrant for Jeffries's arrest on the indictment was issued. Jeffries waived her right to be present at her arraignment, and a not-guilty plea was entered on her behalf.

{¶ 15} On September 20, 2004, the grand jury returned a second indictment charging Jeffries with one count of involuntary manslaughter with a firearm specification, a felony of the first degree (Count 3); two counts of complicity to robbery, felonies of the second degree (Counts 4 and 5), with firearm specifications; and one count of felony murder, a felony of the first degree with a firearm specification (Count 6). These charges were consolidated with the earlier charges. Jeffries again waived her right to be present at her arraignment and the trial court entered a plea of not guilty on her behalf with respect to each of the additional charges.

{¶ 16} On January 21, 2005, Jeffries's defense counsel filed a motion to enforce a post-indictment cooperation or plea agreement and a motion to suppress, seeking the suppression of a statement she had made to the polygraphist. The trial court denied Jeffries's motion to enforce the cooperation agreement and granted in part and denied in part her motion to suppress.

{¶ 17} The matter proceeded to a jury trial on February 4, 2005. The jury found Jeffries guilty on all charges against her, except for one count of complicity to robbery (Count 4), of which she was acquitted.

{¶ 18} On February 17, 2005, the trial court sentenced Jeffries to serve one year for trafficking in cocaine, to be served concurrently with her other sentences; four years for the tampering-with-evidence charge, to be served consecu-

tively; ten years for involuntary manslaughter, to be served concurrently; and 15 years to life on the felony-murder charge, to be served consecutively. Jeffries was not sentenced for her complicity-to-robbery conviction; this charge was merged with the felony-murder charge for the purposes of sentencing.

{¶ 19} Jeffries was additionally sentenced to one year for each of the three firearm specifications, to be served concurrently with each other, and to be served prior to and consecutively to the other terms, for a total prison term of 22 years to life, and was given credit for 316 days for time served.

{¶ 20} Jeffries appealed the trial court's decision to this court. In a two-to-one decision,[2] this court reversed the conviction, holding that the trial court had abused its discretion when the court failed to suppress a statement Jeffries had prepared and given to Maryann Feathers, a polygraphist hired by defense counsel, in preparation for a polygraph test. The majority found that the statement was "made in the course of plea negotiations" and thus should have been suppressed. See *State v. Jeffries*, 11th Dist. No. 2005–L–057, 2007-Ohio-3366, 2007 WL 1881314, at ¶ 72–73.

{¶ 21} The majority further held that "Jeffries' statements, both before and after she was Mirandized, to the police at 2:15 p.m., on December 4, 2001, were given voluntarily and/or were subject to a voluntary waiver of her *Miranda* rights." Id. at ¶ 65. Additionally, the majority held that "the trial court did not abuse its discretion in failing to enforce the entire cooperation agreement and further, even though the agreement contained a remedial provision, * * * the trial court's failure to honor that paragraph was harmless error in light of the fact that it suppressed her statement of June 2, 2003." Id. at ¶ 95. Finally, the majority concluded that upon "review of the evidence, admitted at the trial court level, * * * sufficient evidence was presented to sustain her convictions for [trafficking in cocaine and involuntary manslaughter]." Id. at ¶ 102.

{¶ 22} The state subsequently appealed to the Supreme Court of Ohio, which accepted the discretionary appeal. The Supreme Court reversed the judgment of this court, finding that the statements made to the polygraphist were not made in the course of plea negotiations and were not protected by Evid.R. 410. The Supreme Court subsequently remanded the case to this court for consideration of Jeffries's remaining assignments of error.

{¶ 23} On appeal, Jeffries raises the following assignments of error:

{¶ 24} "[1] The trial court abused its discretion when it denied the defendant-appellant's motion to enforce the cooperation agreement.

---

2. Judge Grendell dissented with an opinion.

{¶ 25} "[2] The trial court erred when it denied defendant-appellant's motion to suppress in violation of her due process rights guaranteed under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Section 10, Article 1 of the Ohio Constitution.

{¶ 26} "[3] The causation jury instructions given by the trial court undercut the mens rea requirement for the charges and thus violated the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

{¶ 27} "[4] The trial court committed reversible error when it refused to submit the defendant-appellant's proposed jury instruction on superseding and intervening causes in violation of the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

{¶ 28} "[5] The trial court committed plain error when it mischaracterized the degree of one of the offenses in its instruction to the jury and limited the jury's consideration of alternative offenses in violation of the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

{¶ 29} "[6] The trial court erred to the prejudice of the defendant-appellant when it instructed the jury on flight contrary to the proffered evidence.

{¶ 30} "[7] The trial court erred to the prejudice of the defendant-appellant when it denied her motion for acquittal made pursuant to Crim.R. 29(A).

{¶ 31} "[8] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

{¶ 32} "[9] The trial court erred to the prejudice of the defendant-appellant when it failed to dismiss the felony-murder charge due to its being in violation of the defendant-appellant's due process and equal protection rights and rights against cruel and unusual punishment as guaranteed by the Ohio and United States Constitutions.

{¶ 33} "[10] The trial court ruled contrary to law when it ordered consecutive sentences.

{¶ 34} "[11] The trial court erred when it sentenced the defendant-appellant to consecutive sentences based upon a finding of factors not found by the jury or admitted by the defendant-appellant in violation of the defendant-appellant's state and federal constitutional rights to trial by jury."

{¶ 35} Under the doctrine of res judicata, any " 'issue that could have been raised on direct appeal and was not is res judicata and not subject to review

in subsequent proceedings.'" *In re S.J.*, 9th Dist. No. 23199, 2006-Ohio-6381, 2006 WL 3498599, at ¶ 14, quoting *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, at ¶ 16; *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, at syllabus. Moreover, " '[w]here an argument could have been raised on an initial appeal, res judicata dictates that it is inappropriate to consider that same argument on a second appeal following remand.'" *S.J.*, 2006-Ohio-6381, 2006 WL 3498599, at ¶ 14, quoting *State v. D'Ambrosio* (1995), 73 Ohio St.3d 141, 143, 652 N.E.2d 710.

{¶ 36} In Jeffries's initial appeal, this court held that Jeffries's first assignment of error, seventh assignment of error, and part of her second assignment of error were without merit. The Ohio Supreme Court subsequently concluded that the remainder of Jeffries's second assignment of error was without merit. Jeffries failed to raise the assignments of error that this court initially concluded were without merit on appeal to the Ohio Supreme Court.

{¶ 37} Therefore, any present consideration by this court of Jeffries's first, seventh, and remaining portion of her second assignment of error is barred by the doctrine of res judicata.

{¶ 38} For discussion purposes, Jeffries's remaining assignments of errors will be addressed out of order.

{¶ 39} In her eighth assignment of error, Jeffries challenges her convictions for trafficking in cocaine, involuntary manslaughter, complicity to robbery, and felony murder as being against the manifest weight of the evidence.

{¶ 40} Weight of the evidence, in contrast to its sufficiency, involves " 'the inclination of the greater amount of credible evidence.'" (Emphasis omitted.) *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) 1594. Whereas the "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support the verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 25, citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" Id.

{¶ 41} Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. *State v. Thomas* (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356, at the syllabus. When reviewing a manifest-weight challenge, however, the appellate court sits as the " 'thirteenth juror.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652. The reviewing court must consider all the evidence in the record, the reasonable

inferences, and the credibility of the witnesses, to determine whether " 'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 42} We conclude that there was substantial direct and circumstantial evidence from which a reasonable jury could infer that Jeffries offered to sell drugs to Spaller and aided and abetted Tyrone in the commission of an armed robbery, the proximate result of which was Spaller's death.

{¶ 43} Undisputed evidence presented at trial revealed that Jeffries agreed to help Spaller purchase crack cocaine on the night of his death. It is likewise undisputed that Jeffries told Spaller that Tyrone would supply him with the drugs. It was Jeffries's suggestion to Spaller that the deal be completed at Recreation Park, rather than at a more public location, as she had routinely done for other drug deals.

{¶ 44} After the drug transaction was arranged, Tills and Cameron attempted to follow Jeffries's vehicle to Recreation Park but were waved off. There was evidence that a physical struggle occurred, including evidence that Spaller's pants were ripped near the pocket where his cash was found. Spaller's bloody fingerprints were found on Jeffries's vehicle. Telephone records revealed that there were numerous calls between Jeffries and Tyrone both prior to and after the incident occurred. In addition, Tills and Cameron repeatedly tried to contact Jeffries to find out what had happened but were given various conflicting stories. There was testimony from various witnesses from which the jury could infer that Jeffries waited over three hours after the attack before she notified police.

{¶ 45} Furthermore, there was testimony from Jeffries's friend, Monica Griswald, that Jeffries appeared at her house around 1:30 a.m. and asked for a rag and a sponge, which she later used to wipe blood from her car. Physical evidence from the vehicle corroborated this testimony. Griswald also testified that after attempting to clean the vehicle, Jeffries demanded that she drive first to where Tills was, and eventually to Recreation Park, where Griswald saw Spaller's body. Later, the two picked up Gary Bafford, Monica Griswald's boyfriend, who testified that Jeffries offered him $100 to "move a body." Finally, Gina Groskopf testified that Jeffries made statements to her in jail that described a plan to rob Spaller on the night of his death by luring him to Recreation Park with the promise of drugs.

{¶ 46} Based upon the foregoing, we cannot conclude that the jury lost its way or created a manifest miscarriage of justice by finding Jeffries guilty of the aforementioned charges.

{¶ 47} Jeffries's eighth assignment of error is without merit.

{¶ 48} In Jeffries's ninth assignment of error, Jeffries argues that the trial court erred by failing to dismiss the felony-murder charge against her as violating her rights to due process and equal protection and right to be free from cruel and unusual punishment, as guaranteed by the Ohio and United States Constitutions. We disagree.

{¶ 49} Jeffries admits that these issues were not raised at trial and are merely being raised to preserve future rights to appeal and thus requests that this court review her arguments under a plain-error standard. However, it is well settled that the failure to raise the issue of the constitutionality of a statute or its application at the trial-court level, when the issue is apparent at the time of trial, constitutes a waiver of these issues on appeal. *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus; *Amare v. Chellena Food Express, Inc.*, 10th Dist. No. 08AP–678, 2009-Ohio-147, 2009 WL 104775, ¶ 14, quoting *Ohio Civ. Rights Comm. v. Triangle Real Estate Serv., Inc.*, Franklin App. No. 06AP–157, 2007-Ohio-1809, 2007 WL 1125842, ¶ 11 (" 'issues not initially raised in the trial court may not be raised for the first time on appeal' "); *State v. Heilman*, 11th Dist. Nos. 2004–T–0133 and 2004–T–0135, 2006-Ohio-1680, 2006 WL 847120, ¶ 58.

{¶ 50} Even if appellant had timely raised these issues, we previously considered and rejected these arguments. See *State v. Reeds,* 11th Dist. No. 2007–L–120, 2008-Ohio-1781, 2008 WL 1701702, at ¶ 97 ("R.C. 2903.02(B) is constitutional and does not offend notions of due process, equal protection, or constitute cruel and unusual punishment").

{¶ 51} Jeffries's ninth assignment of error is without merit.

{¶ 52} Jeffries's third and fifth assignments of error will be discussed together since they both allege erroneous jury instructions to which she did not object at the trial court level.

{¶ 53} In her third assignment of error, Jeffries argues that the trial court committed plain error in giving instructions related to "natural consequences," which impermissibly reduced the mens-rea requirement from a knowledge standard to a civil negligence standard. However, since Jeffries failed to object to the jury instruction at the trial court, she thereby forfeited all but plain error. *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶ 51.

{¶ 54} An alleged error is plain error only if it is "obvious," *State v. Sanders* (2001), 92 Ohio St.3d 245, 257, 750 N.E.2d 90, and "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, at paragraph two of the syllabus. "The plain-error rule is applied 'under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, at ¶ 11, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 97, 7 O.O.3d 178, 372 N.E.2d 804.

{¶ 55} With respect to Jeffries's third assignment of error, a review of the record reveals that the trial court's instructions related to this issue were a verbatim recitation of the language contained in 4 Ohio Jury Instructions (2000) 64–65, Section 409.55. Jeffries acknowledges that she did not object to these instructions at trial. Moreover, Jeffries concedes that this court has previously rejected such a contention and that she raises the argument merely to preserve the issue for further appeal. See *State v. Crain*, 11th Dist. No. 2001–L–147, 2003-Ohio-1204, 2003 WL 1193788, at ¶ 40 (the jury instruction on causation did not impermissibly change the mens-rea requirement for attempted murder and felonious assault to a civil-negligence standard); *State v. Magnusson*, 11th Dist. No. 2006–L–263, 2007-Ohio-6010, 2007 WL 3342395, at ¶ 55. Moreover, "[a] single jury instruction may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, at ¶ 57. We cannot say that there was plain error in the trial court's instructions.

{¶ 56} Jeffries's third assignment of error is without merit.

{¶ 57} In her fifth assignment of error, Jeffries maintains that the trial court committed plain error when it mischaracterized the degree of one of the offenses in its instruction to the jury and limited the jury's consideration of alternative offenses in violation of Jeffries's right to due process and a fair trial.

{¶ 58} At trial, Jeffries requested that a Painesville City municipal ordinance on controlled-substance solicitation, the trafficking statute enacted by a city as an ordinance, be given to the jury as a lesser included offense to trafficking in cocaine. The court ruled that it was an offense of inferior degree, not a lesser included offense as the defense had stated. The court found that "[i]nferior degrees of the indicted offense occur where the elements of the lesser offense are identical to or contained within the indicted offense, except for [in this case] * * * instead of offering to sell in Trafficking, you're soliciting to buy in Solicitation."

{¶ 59} The court subsequently agreed to give the instruction on the inferior degree in both the trafficking-in-cocaine and the involuntary-manslaughter, prem-

ised on trafficking-in-cocaine, counts. However, when the court gave the jury instruction, the court mischaracterized the offense of an inferior degree, by calling it a "lesser offense" in both the trafficking-in-cocaine and the involuntary-manslaughter counts. Jeffries contends that referring to the offense of inferior degree as a lesser offense in the jury instructions and then instructing the jury that if the state proved all the elements of the more serious offense, its verdict must be guilty, constituted plain error.

{¶ 60} The Painesville city ordinance on controlled-substance solicitation provides: "No person shall knowingly solicit, request, command or induce another to sell, barter, exchange, donate, give or otherwise transfer or deliver any drug of abuse, controlled substance, dangerous drug or marijuana, *to that person* or another. * * * Whoever violates this section is guilty of controlled substance solicitation, a misdemeanor of the second degree." (Emphasis added.) Painesville Codified Ordinance 524.145(a) and (c).

{¶ 61} "Ohio law permits a trier of fact to consider three types of lesser offenses when determining a defendant's guilt: '(1) attempts to commit the crime charged, if such an attempt is an offense at law; (2) inferior degrees of the indicted offense; or (3) lesser included offenses.'" *Shaker Hts. v. Mosely,* 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 10, quoting *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph one of the syllabus.

{¶ 62} "Pursuant to R.C. 2945.74 and Crim.R. 31(C), a jury may consider * * * lesser offenses on which, when supported by the evidence at trial, it must be charged and on which it may reach a verdict." *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, at paragraph one of the syllabus. A lesser included offense is one in which "(i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense * * * also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." Id., at paragraph three of the syllabus.

{¶ 63} A comparison of the language of the ordinance to that of the statute reveals that while the ordinance satisfies the first element of the *Deem* test, the second and third elements fail.

{¶ 64} The second element of the *Deem* test fails because there are situations in which an accused may be found guilty under the ordinance (the "lesser offense") and *not be found guilty* under the statute (the "greater offense"). In particular, the ordinance specifically proscribes the knowing "solicit[ation], request, command, or induce[ment] of another to sell * * * to *that person.*" (Emphasis added.) Painesville Codified Ordinance 524.145(a). Thus, under the ordinance a person may be found guilty if he takes any of these actions in the

position of a *buyer* for his own use, whereas R.C. 2925.03 only prohibits the sale or offer to sell of a controlled substance to *another*. The third element of the *Deem* test fails for the same reason, since the lesser offense, as defined by the ordinance, may be violated without a knowing offer to sell, as required by the statute.

{¶ 65} Conversely, an offense of an inferior degree on the indicted offense is one in which the elements are identical with the indicted offense except for one or more additional mitigating elements. *Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294, at paragraph two of the syllabus. "[T]he group of 'inferior degree[s]' of the indicted offense is wholly distinct from the group of 'lesser included offenses.' The term 'degrees' used in both the statute and the rule refers to the penalties for felonies and misdemeanors * * * which are grouped into descending categories of imprisonment and fines according to the severity of the offense. An 'offense, including different degrees,' is an offense which, upon proof of a mitigating or aggravating element, is assigned a different 'degree' of punishment." Id. at 208–209, 533 N.E.2d 294. Thus, the court was correct in concluding the offense was one of an inferior degree and not a lesser included offense.

{¶ 66} Jeffries cites *State v. Mays*, 161 Ohio App.3d 175, 2005-Ohio-2609, 829 N.E.2d 773, claiming the jury instruction in *Mays*, which was found to be in plain error, was similar to the one given in the present case. In *Mays*, the defendant was indicted on two counts of murder with two separate theories of the case: the victim was either poisoned or beaten to death. The court gave the jury an erroneous instruction, telling the jury that aggravated assault was a lesser included offense of felonious assault. "More serious [was] the court's statement that if the jury found all the elements of felonious assault, it *could not* find aggravated assault." (Emphasis sic.) Id. at ¶ 31. "But for this error, [the] defendant may have been convicted of aggravated assault rather than felonious assault." Id.

{¶ 67} Likewise in the instant case, the jury instructions provide: "If you find that the state proved beyond a reasonable doubt all the essential elements of the offense of Trafficking in Cocaine, your verdict *must be guilty* of Trafficking in Cocaine." (Emphasis added.) Additionally, the jury instructions stated, "If you find that the state proved beyond a reasonable doubt all the essential elements of the offense of Involuntary Manslaughter (premised upon Trafficking in Cocaine), your verdict *must be guilty* of Involuntary Manslaughter." (Emphasis added.)

{¶ 68} Jeffries argues that like *Mays*, the jury instruction cut "off the jury's consideration of the offense of an inferior degree. In Ms. Jeffries' case that meant that her conviction for Involuntary Manslaughter would remain a felony of

the first degree without the jury being permitted to consider the alternative Involuntary Manslaughter, a third degree felony."

{¶ 69} The state contends that "while the *Mays* case raises the issue of faulty jury instructions concerning an inferior offense, the case is vastly distinguishable based on the facts and the implications of faulty instructions on the verdict. Therefore, this issue does not rise to the level of plain error in this case."

{¶ 70} However, even if we were to accept Jeffries's contention that the court gave an improper instruction, under the doctrine of invited error, a party who induces error is prohibited from taking advance of such an error on appeal. *State v. Woodruff* (1983), 10 Ohio App.3d 326, 327, 10 OBR 532, 462 N.E.2d 457.

{¶ 71} In the present case, Jeffries requested the charge under the Painesville ordinance *as a lesser included offense* to the charge of trafficking in cocaine. Invited error occurs when trial counsel is " 'actively responsible' " for the trial court's error. *State v. Campbell* (2000), 90 Ohio St.3d 320, 324, 738 N.E.2d 1178, quoting *State v. Kollar* (1915), 93 Ohio St. 89, 112 N.E. 196. Further, "invited error [occurs] when a party has asked the court to take some action later claimed to be erroneous * * *." Id.

{¶ 72} Jeffries's fifth assignment of error is without merit.

{¶ 73} In her fourth assignment of error, Jeffries argues that the trial court erred to her prejudice by failing to adopt her proposed jury instruction with regard to "superseding and intervening causes."

{¶ 74} "An appellate court can only reverse a trial court's refusal to give a defendant's requested instruction upon a showing of abuse of discretion by the trial court." *State v. Strickland,* 11th Dist. No. 2005–T–0002, 2006-Ohio-2498, 2006 WL 1381532, at ¶ 24, citing *State v. Midwest Pride IV, Inc.* (1998), 131 Ohio App.3d 1, 15, 721 N.E.2d 458.

{¶ 75} Jeffries requested a specific jury instruction concerning superseding and intervening causes. The court read the defense's proposed instruction, then read 1 Ohio Jury Instructions (2000) 172–173, Section 11.30, and formulated a new instruction. The court told Jeffries, "A jury, if they were to follow your thinking, can easily fit the scenario that you described into the proximate cause result instruction I gave. Here I'll show you," whereupon the court showed that there was sufficient language in the instruction addressing the issues raised by Jeffries with regard to superseding and intervening causes.

{¶ 76} "[I]t is not incumbent upon the trial court to give the defendant's requested instructions to the jury verbatim; the court may use its own language to communicate the same legal principles." *State v. Sneed* (1992), 63 Ohio St.3d

3, 9, 584 N.E.2d 1160. It is clear from the record that the trial judge considered Jeffries's proposed instruction and then used its own language to communicate the proper legal principles. Thus, the trial court did not abuse its discretion by declining Jeffries's request.

{¶ 77} Jeffries's fourth assignment of error is without merit.

{¶ 78} In her sixth assignment of error, Jeffries argues that the trial court erred by adopting the prosecution's proposed flight instruction, contrary to the evidence.

{¶ 79} "The decision whether to issue a flight instruction rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Davilla*, 9th Dist. No. 03CA008413, 2004-Ohio-4448, 2004 WL 1882651, at ¶ 12, citing *State v. Sims* (1984), 13 Ohio App.3d 287, 289, 13 OBR 351, 469 N.E.2d 554.

{¶ 80} "[I]t is also well established that the flight of an accused from justice is admissible as evidence of the consciousness of guilt. * * * ' "It is to-day [sic] universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." 2 Wigmore on Evidence (3 Ed.), 111, Section 276, and cases cited.' " (Emphasis omitted.) *State v. Cline*, 11th Dist. No. 2007–T–0052, 2008-Ohio-1500, 2008 WL 835830, at ¶ 60; *State v. Eaton* (1969), 19 Ohio St.2d 145, 160, 48 O.O.2d 188, 249 N.E.2d 897. It is reserved for the jury to determine " 'how much weight should be given to such evidence.' " *United States v. Dillon* (C.A.6, 1989), 870 F.2d 1125, 1126, quoting *United States v. Craig* (C.A.6, 1975), 522 F.2d 29, 32. "[A] jury instruction on flight is appropriate if there is sufficient evidence in the record to support the charge." *Davilla*, 2004-Ohio-4448, 2004 WL 1882651, at ¶ 12.

{¶ 81} The trial court gave the following instructions related to Jeffries's flight:

{¶ 82} "In this case, there has been evidence presented that the defendant fled from the Painesville Police Department, left the State of Ohio, and concealed her identity from the Cleveland Police Department. In regard to this evidence, you are instructed that flight in and of itself does not raise a presumption of guilt, but it may tend to show consciousness of guilt or a guilty connection with the crime(s). If, therefore, you find that the defendant did flee from the Painesville Police Department, and/or left the State of Ohio, and/or concealed her identity from the Cleveland Police Department, you may consider these circumstances in the case in determining the guilt or innocence of the defendant. Upon you alone rests the decision to determine what weight, if any, you place upon the evidence you find, if any, which bears upon this issue."

{¶ 83} Jeffries argues that the trial court improperly instructed the jury on flight because there was no evidence of flight. Additionally, she asserts that because she was located in Cleveland more than two years after the commission of the murder, in an area within the community where the crime occurred, her actions did not constitute flight. We disagree.

{¶ 84} The record indicated that in July 2003, shortly after Jeffries failed to satisfy the terms of the cooperation agreement, she did not report to her probation officer and disappeared for a period of eight months. The terms of the cooperation agreement provide that in the event of the failure of the cooperation agreement, Jeffries could be subject to "further criminal charges in relation to the death of Dustin Spaller." After Jeffries disappeared, the state reindicted her on the trafficking and tampering-with-evidence charges.

{¶ 85} Evidence presented at trial showed that in December 2004, Detectives Sayer and Manley received a report that Jeffries was at a Wal–Mart store in Mentor, Ohio. When the detectives went to investigate, Jeffries ran away, eventually escaping through a fire door and eluding capture. Additionally, evidence presented at trial demonstrated that in March 2004, Officer Thomas Rauscher of the Cleveland police department received a tip about the where-abouts of a "possible fugitive" named Jen. When Officer Rauscher went to investigate, he encountered Jeffries and questioned her, at which time she gave him a false name and social security number.

{¶ 86} "[F]light may be proven where it occurs after any event which would tend to spark a sharp impulse of fear of prosecution or conviction in a guilty mind." *Dillon*, 870 F.2d at 1128. Under the circumstances presented here, we cannot conclude that the trial court abused its discretion in adopting the state's flight instruction.

{¶ 87} Jeffries's sixth assignment of error is without merit.

{¶ 88} Since Jeffries's tenth and eleventh assignments of error are challenges based on the constitutionality of her sentencing, they will be addressed together. Jeffries challenges the trial court's imposition of consecutive sentences based upon factual findings not admitted by her or found by a jury as contrary to law. The trial court sentenced Jeffries to consecutive terms for her felony convictions. In doing so, the trial court applied R.C. 2929.14(B), 2929.19(B)(2), and 2929.14(E)(4).

{¶ 89} Pursuant to R.C. 2953.08(G), an appellate court may vacate the sentence and remand the matter to the trial court for resentencing if it "clearly and convincingly finds" that the sentence imposed by the trial court is "contrary to law." R.C. 2953.08(G)(2)(b); *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, at ¶ 23.

{¶ 90} The state concedes this issue, based upon the Supreme Court of Ohio's holding in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. "In *Foster*, we excised as unconstitutional R.C. 2929.14(B), (C), and (E)(4), which were portions of Ohio's felony sentencing laws that required the trial court to make findings when imposing nonminimum, maximum, and consecutive sentences respectively. * * * We did this because those sections *required* judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant." (Emphasis sic.) *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 56.

{¶ 91} Pursuant to *Foster*, the trial court's imposition of sentence based upon these now unconstitutional findings renders Jeffries's sentence void and requires that this court vacate her sentence and remand this matter to the trial court for resentencing. *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 103.

{¶ 92} Upon remand, Jeffries is entitled to a new sentencing hearing but "may stipulate to the sentencing court's acting on the record before it." Id. at ¶ 105. In conducting the resentencing exercise, the trial court "shall consider those portions of the sentencing code that are unaffected" by the holding of *Foster* and is free to "impose any sentence within the appropriate felony range," including requiring the offender to serve those terms consecutively. Id. Jeffries is now free to argue for a reduction in her sentence, just as the state may now seek a greater penalty. Id.

{¶ 93} Jeffries tenth and eleventh assignments of error have merit.

{¶ 94} For the foregoing reasons, we affirm Jeffries's judgment of conviction in the Lake County Court of Common Pleas, vacate Jeffries's judgment of sentence, and reverse and remand for proceedings consistent with this opinion.[3]

Judgment accordingly.

CANNON, J., concurs.

O'TOOLE, J., concurs in judgment only.

---

3. When originally sentenced, Jeffries was improperly convicted and sentenced on both the involuntary-manslaughter and felony-murder counts. See *State v. Johnson* (1983), 6 Ohio St.3d 420, 6 OBR 466, 453 N.E.2d 595, at paragraph two of the syllabus, reversed on other grounds by *Ohio v. Johnson* (1984), 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (the prohibitions against double jeopardy require that in any one killing, an offender may be convicted of murder or involuntary manslaughter, but not both). Upon remand, the trial court should merge these convictions before sentencing. *State v. Davis* (1996), 76 Ohio St.3d 107, 120, 666 N.E.2d 1099.