[Cite as *State v. Berry*, 2015-Ohio-4320.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-A-0005** |
| AARON A. BERRY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2014 CR 00308.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Edward M. Heindel,* 450 Standard Building, 1370 Ontario Street, Cleveland, OH 44113 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Aaron A. Berry, appeals from the judgment of conviction, entered after a trial by jury, by the Ashtabula County Court of Common Pleas, on one count of robbery. We affirm the judgment of the trial court.

{¶2} On June 26, 2014, appellant was charged with two counts of robbery, in violation of R.C. 2911.02(A)(2), felonies of the second degree. Appellant pleaded not guilty and the matter proceeded to jury trial.

{¶3} The following facts were adduced at trial: On May 13, 2014, Anthony Sposito, a loss prevention associate at K-Mart in Ashtabula Township was observing customers with the store's camera system when he noticed a male behaving suspiciously in the health and beauty department. The male was surveying the area when he selected a box of Claritin-D from the shelf and concealed it in his pants. He walked into and browsed the shoe section before leaving the store through the mall exit. The male was identified by Sposito as appellant.

{¶4} Sposito paged Jacob Lovejoy, a co-worker, to assist him in confronting appellant. When the two men initiated contact, Sposito identified himself and explained what he observed on camera. Appellant denied selecting and concealing the pills and became aggressive and confrontational. Sposito asked appellant to return to the store, but appellant declined, still denying the allegation.

{¶5} Sposito, who had not touched appellant, remained in front of appellant. Appellant, in an attempt to bypass Sposito spun and delivered an elbow to Lovejoy's face. Both Sposito and Lovejoy testified the elbow strike was "no accident." After striking Lovejoy, Sposito took appellant to the ground and asked Lovejoy to assist him because he believed appellant was a threat to their safety. During the struggle, appellant struck Sposito a "couple times in the face" with his elbow. Appellant also struck Lovejoy several additional times. Eventually, Sposito and Lovejoy allowed appellant off the ground and appellant fled east through the mall.

{¶6} Sposito immediately contacted the Ashtabula County Sheriff's Department. While speaking to the dispatcher, Sposito stepped outside and observed appellant running through a parking lot near an abandoned building, south of the mall.

2

He observed appellant climb a hill at the west end of that building, but then lost sight of him. Sposito gave dispatch a description of appellant along with his last known location.

{¶7} Deputy Evan Wolff of the Ashtabula County Sheriff's Department arrived at the scene approximately five minutes after being dispatched. The deputy was approached by a civilian who advised him that an individual matching appellant's description had entered a Rent One store near the mall. When he entered the business, he observed appellant sitting at a table. The deputy identified himself and asked appellant to stand. Appellant did not look at Deputy Wolff and did not stand. Appellant was subsequently detained and Mirandized. Appellant advised the deputy he had been assaulted by K-Mart employees and explained he did not take anything from the store.

{¶8} Deputy Wolff brought appellant back to K-Mart. He asked Sposito to recount what occurred. Sposito provided a statement, but appellant continued to deny the theft as well as striking Sposito and Lovejoy. Deputy Wolff viewed the surveillance video of the theft and also reviewed a video of the physical confrontation. After viewing the video, appellant admitted to the theft, but denied facilitating the physical confrontation. Instead, he claimed he was assaulted and was merely defending himself. Appellant was arrested based upon the video and the statements of the victims.

{¶9} At trial, appellant admitted to the theft. He testified that, after leaving the store, he was approached by Sposito. When he attempted to leave, appellant claimed Sposito put his hand on his chest and pushed him. He asserted he never pushed either

3

of the K-Mart employees; instead, he claimed Sposito picked him up off the ground and Lovejoy grabbed him by the throat. Appellant testified he was not trying to hurt anyone.

{¶10} After trial, the jury found appellant guilty on count one of the lesser included offense of felony-three robbery, in violation of R.C. 2911.02(A)(3), but not guilty of the other lesser included offense of theft. On count two, the jury found appellant not guilty of felony-two robbery, and not guilty of the lesser included offense of felony-three robbery; the jury, however, found appellant guilty of misdemeanor-one theft, in violation of R.C. 2913.02(A)(1). The court merged the theft offense with the robbery and the state elected to proceed to sentencing on the robbery count. Appellant was sentenced to 18-months imprisonment for robbery. Appellant now appeals assigning three errors for this court's review. His first assignment of error provides:

{¶11} "The conviction for robbery, in violation of R.C. 2911.02(A)(3) was against the manifest weight of the evidence and not supported by sufficient evidence."

{¶12} A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence relating to each element of the charged offense. *State v. Windle*, 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi* 179 Ohio App.3d 326, 2008-Ohio-6062 ¶9 (11th Dist.).

{¶13} In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction

4

must be reversed and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-*15 (Dec. 23, 1994).

{¶14} Under this assignment of error, appellant first asserts the jury lost its way in convicting him of robbery when it found he was not guilty of the lesser included offense of theft on the same count. Appellant claims these verdicts are inconsistent and, due to this apparent inconsistency, they are against the weight of the evidence. We do not agree.

{¶15} The jury, in this matter, found appellant guilty of robbery, a felony of the third degree, and petty theft, a first degree misdemeanor. It found him not guilty of the following: two counts of felony-two robbery, one count of felony-three robbery, and another M-1 petty theft. Contrary to appellant's assertion, therefore, the jury found him guilty of *both* robbery *and* petty theft. While the jury did acquit appellant of the remaining petty theft count, this simply suggests that, given the facts of the case, it was not disposed to hold appellant accountable merely for petty theft on each count. This, however, does not constitute reversible error.

{¶16} "[T]he sanctity of a jury verdict should be preserved despite potential inconsistencies." *State v. Brown*, 11th Dist. Lake No. 2014-L-032, 2015-Ohio-950, ¶55, citing *Dunn v. United States*, 284 U.S. 390, 393 (1932). The facts in this case could have supported felony-three robbery convictions committed against both victims. The jury, however, through apparent lenity, determined appellant's conduct did not merit this outcome. Appellant was not entitled to a verdict of petty theft on each count simply because the jury determined that lesser included offense was proper on count two. Even though both robberies were premised upon the same conduct, the jury was free to

5

weigh the evidence and arrive at a conclusion that reflected its perception of the facts of this particular case. Although the verdict may appear inconsistent, we discern no error in the jury's conclusions.

{¶17} Next, appellant argues the state introduced no evidence that appellant used, or threatened to use, immediate force against the victims in this case. Moreover, appellant asserts the evidence did not support the conclusion that he was fleeing immediately after the offense. Thus, he concludes, the jury erred in finding him guilty of felony-three robbery.

{¶18} Appellant was convicted of robbery, in violation of R.C. 2911.02(A)(3). That statute provides:

{¶19} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶20} "* * *

{¶21} "(3) Use or threaten the immediate use of force against another."

{¶22} "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶23} Here, both victims testified that, upon encountering appellant at the exit, appellant became belligerent and eventually struck Lovejoy with an elbow. And, although Sposito took appellant to the ground after delivering the blow, appellant proceeded to struggle, striking both Sposito and Lovejoy during the scuffle. Finally, once Sposito and Lovejoy withdrew, the evidence demonstrated appellant ran east through the mall, across the parking lot, and into a nearby business.

{¶24} The foregoing demonstrates there was sufficient evidence that appellant used force in fleeing immediately after committing the theft offense. We therefore conclude there was sufficient, persuasive evidence to support the jury's verdict convicting appellant of felony-three robbery.

{¶25} Appellant's first assignment of error lacks merit.

{¶26} Appellant's second assignment of error provides:

{¶27} "The trial court erred when it misstated the purposes of felony sentencing and sentenced Berry to eighteen months in prison."

{¶28} At the sentencing hearing, the trial court stated, "[t]he overriding purposes [of felony sentencing] are to punish offenders and, most importantly, to protect the public." Appellant claims this statement does not accurately reflect the stated purposes of felony sentencing as codified under R.C. 2929.11. Accordingly, he argues the matter should be reversed and remanded for resentencing. We do not agree.

{¶29} R.C. 2929.11(A) provides, in relevant part:

{¶30} A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources.

{¶31} A sentencing court must consider the overriding purposes of felony sentencing in calculating an appropriate sentence. And, while it may be prudent for the

sentencing court to paraphrase the language of a sentencing statute, "'the exact language [of] the sentencing statute is not "talismanic," and therefore, the trial court need not recite the exact language * * * as if it amounted to the "magic words" necessary to impose a prison term on an offender." *State v. Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671, ¶40 (2d Dist.), quoting *State v. Marple*, 12th Dist. Clermont No. CA2004-09-073, 2005-Ohio-6272, ¶30. Even where a sentencing court makes no mention of R.C. 2929.11 on the record, reviewing courts presume the court gave proper consideration to the statute. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶18, fn. 4.

{¶32} Here, the mere fact that the trial court did not provide a full and complete statement of the purposes of felony sentencing does not render appellant's 18-month term of imprisonment contrary to law. The court's statement relating to the purposes of felony sentencing highlights the primary guiding policies upon which felony sentencing is premised. That the court asserted that protecting the public is more important than punishing an offender does not suggest bias or a misunderstanding of the law; rather, under these circumstances, it indicates the court's concern with appellant's conduct that led to the charges. To wit, after making the statement relating to the purposes of sentencing, the court continued:

{¶33} K-Mart and the stores are not out there to give their merchandise away free. They have employees, they have stockholders, people they have to account for, and you just can't go into those places of business, take what you want and walk out, and then get physical with the employees when they try to detain you.

8

{¶34} The record demonstrates the court properly considered all statutory factors in arriving at appellant's statutorily-authorized sentence.

{¶35} One final point must be addressed. The concurring judge fulminates over our citation to *Kalish* because, in her view, the cite may somehow mislead readers into believing that we are utilizing the *Kalish* standard for reviewing appellant's felony sentence. While we mention *Kalish*, we cite the case for a separate proposition; namely that the failure to mention R.C. 2929.11 on record, results in a presumption that a trial court adequately considered the overriding purposes of felony sentencing as set forth under the statute. Even though the *Kalish* standard has been abrogated, the principle for which we cite the case has not. And, most importantly, we make no mention of the *Kalish* standard and do not evaluate the instant assigned error using that standard. Appellant's argument asserts his sentence was contrary to law; as discussed in our analysis, we find no basis for this challenge. Notwithstanding the concurring judge's enlightened observations regarding the "audience" to whom we speak and "best practices" for legal opinion drafting, there is absolutely no risk that a reader of this opinion could reasonably mistake the proposition for which we cite *Kalish* or otherwise misunderstand "the controversy at hand."

{¶36} Appellant's second assignment of error lacks merit.

{¶37} Appellant's third assignment of error alleges:

{¶38} "The trial court committed plain error when it provided a flight instruction to the jury."

{¶39} Appellant asserts the flight instruction misled the jury because it did not differentiate between his "consciousness of guilt" on the theft charge or the robbery

charge. By instructing the jury that flight tended to show consciousness of guilt, appellant argues, the trial court confused the issue of which crime appellant was fleeing from, the theft or robbery. We do not agree.

{¶40} The decision to issue a flight instruction is a matter within the trial court's discretion and will not be reversed save an abuse of discretion. *State v. Jeffries*, 182 Ohio App.3d 459, 2009-Ohio-2440, ¶79 (11th Dist.), citing *State v. Davilla*, 9th Dist. Lorain No. 03CA008413, 2004-Ohio-4448, ¶12.

{¶41} "[I]t is * * * well established that the flight of an accused from justice is admissible as evidence of the consciousness of guilt. * * * 'It is to-day [sic] universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" *State v. Cline*, 11th Dist. Trumbull No. 2007-T-0052, 2008-Ohio-1500, ¶60. (Citations and emphasis omitted). An instruction on flight is proper if there is sufficient evidence to support the charge. *Jeffries*, *supra*, at ¶80.

{¶42} Appellant argues the flight instruction was improper because it potentially misled the jury insofar as the court did not make it clear whether it pertained to the theft charge or the robbery charge. This argument makes little sense. Because appellant was charged with both theft and robbery *and* the circumstances of the case indicated appellant fled after being confronted on the theft and fighting with the employees, the flight charge related to both crimes. This case did not present an instance in which the jury was forced to choose which crime the instruction related to because it was necessarily applicable to both. We therefore conclude there was no possibility of jury

10

confusion on this issue as it was required to consider the instruction as it applied to each discrete crime with which appellant was charged.

{¶43} With respect to the propriety of the instruction, the state introduced evidence that appellant, after committing the theft *and* fighting with Sposito and Lovejoy, ran through the mall, a parking lot, and disappeared near an abandoned building; he was later found inside a local business. Appellant's actions after the theft were sufficient to justify the flight instruction in this matter.

{¶44} Appellant's third assignment of error lacks merit.

{¶45} For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶46} I concur in the majority's reasoning and disposition of the assignments of error. I am aware that the majority cites to *Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, for the following proposition, namely: "Even where a sentencing court makes no mention of R.C. 2929.11 on the record, reviewing courts presume the court gave proper consideration to the statute."

{¶47} I write separately simply to note that *Kalish*, as of the date of this writing, contains the following "Warning Analyses" on LexisNexis: abrogated 7 times; overruled

11

2 times; superseded 55 times; questioned 3 times; and criticized 11 times. I am puzzled why the majority desires to continue to cite to such a case when there is a stronger authority which renders a clearer, more valid citation for the underlying proposition. *See, e.g., State v. Blair-Walker*, 11th Dist. Portage No. 2012-P-0125, 2013-Ohio-4118, ¶7-20; *State v. Grodzik*, 11th Dist. Portage No. 2012-P-0111, 2013-Ohio-5364, ¶21-22 (O'Toole, J., concurring in judgment only with a Concurring Opinion).

**{¶48}** We try to write for an audience and for the litigants' understanding of the controversy at hand. It only makes sense we use best practices and cite to the best cases. *Kalish* is no longer good law. It is so much simpler to use another case.