[Cite as *State v. Cultrona*, 2020-Ohio-3250.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| IAN CULTRONA | : | Case No. 2019 AP 06 0019 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 2018 CR 12 0462



JUDGMENT:                        Affirmed



DATE OF JUDGMENT:                June 5, 2020




APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

RYAN STYER                                LINDSEY K. DONEHUE-ANGLER
125 East High Avenue                      217 North 8th Street
New Philadelphia, OH  44663               Cambridge, OH  43725

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Ian A. Cultrona appeals the May 21, 2019 judgment of conviction and sentence of the Tuscarawas County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On December 5, 2018, Cultrona and four co-defendants – Samantha Owen, Lucian Lambes, Doug Casteel, and Lisa Freetage -- arranged to purchase an ounce of marijuana from Brennan Wilkin for $200. The actual plan, however, was to rob Wilkin of drugs and money. Arrangements were made for the purchase via text and Facebook messaging between Owen and Wilkin. Cultrona and his co-defendants also communicated via text and cell phone contact throughout the events of the day.

{¶ 3}   Cultrona and his co-defendants took 2 cars to meet Wilkin. Instead of meeting Wilkin at his home near Casteel's home where the plan was hatched, Cultrona and his cohorts directed Wilkin to a remote country road several miles outside Newcomerstown. Cultrona drove his blue minivan with Owen as a passenger. Lambes drove Freetage's black Dodge Dart with Freetage and Casteel as passengers. Cultrona, Lambes and Casteel all had handguns.

{¶ 4}   The group drove to the prearranged secluded pull-off location on Liberty Road. Cultrona and Owen remained there while the other three drove a short distance down the road where they backed into a gated lane. All five kept in contact via Cultrona's and Lambes' Verizon cell phones and calls between Owen's and Casteel's cell phones. At the same time, Owen was texting Wilken to direct him to her location.

{¶ 5} Wilkin arrived with two passengers and parked his Ford Escape SUV directly behind Cultrona's minivan. Owen approached Wilkin and asked for a sample of the marijuana which Wilkin provided. As Owen walked the sample back to Cultrona's van, Lambes burst onto the scene in Freetage's car. Lambes and Casteel exited the car wearing bandana facemasks and brandishing handguns. At the same time, Cultrona exited his van, also wearing a bandana mask and brandishing a handgun.

{¶ 6} The three surrounded Wilkin's SUV, aiming their weapons at the occupants and demanding Wilkin's marijuana and cash. Wilkin threw a yellow bag containing marijuana out the window and sped away. As he did, one of the men fired a shot at the SUV, flattening a rear tire. Lambes and Casteel jumped back into the Dodge and gave chase for four miles while firing numerous shots at Wilkin's vehicle. Four shots found their mark, one of which entered the passenger compartment and severed a fingertip of a 17-year-old passenger. Wilkin stopped when he spotted another motorist behind him. That person gave Wilkin and his three passengers a ride to the Newcomerstown Police Department.

{¶ 7} While that was going on, Cultrona drove in the opposite direction of the chase. After receiving a call from Lambes, Cultrona changed course and headed toward Kimbolton, a small nearby village. From there Cultrona made several phone calls. Two hours after the robbery and shooting, Cultrona and Owens went to Owens' residence. Owens was arrested later that evening leaving her child's school Christmas program. Approximately the same time, Cultrona was arrested in the basement of Owen's home. A .357 revolver was recovered from the pocket of his coat, and a yellow bag containing marijuana was recovered among Cultrona's belongings.

{¶ 8}   Cultrona was subsequently charged with conspiracy to commit aggravated robbery, aggravated robbery, three counts of felonious assault and three counts of attempted murder. Each count included a firearm specification.

{¶ 9}   Cultrona pled not guilty to the charges, and on January 29, 2019, was released on bond. He was placed on pretrial supervision with the intensive supervision unit of the Tuscarwaras County Probation Department. Cultrona was fitted with a GPS ankle monitor and advised of the terms and conditions of pretrial supervision. Cultrona indicated he understood the terms and conditions. Cultrona failed, however, to report to pretrial supervision as directed, allowed the battery in his ankle monitor to die, cut the monitor off, and fled the state. On February 22, 2019, investigators from the Tuscarawas County Sheriff's Department tracked Cultrona down in Pennsylvania and took him into custody.

{¶ 10} Before trial, counsel for Cultrona filed a motion in limine seeking to prohibit the introduction of any evidence concerning violations of the conditions of his bond, and flight from the jurisdiction. Counsel argued Cultrona's flight from the jurisdiction was too far removed from his alleged crimes to warrant a flight instruction. Before jury selection in March 2019, the trial court held a hearing on the matter and took the same under consideration. The court ultimately permitted the testimony and included a flight instruction in its jury instructions.

{¶ 11} Also before trial, counsel for Cultrona filed a motion in limine objecting to the admission of a map created by Tuscarawas County Sheriff's Office Detective Sergeant Hamilton. Hamilton created the map from Cultrona's Verizon Wireless cell phone records, and showed where Cultrona was located when he made phone calls to

Lambes on the day in question. Hamilton created the map using an FBI program called Castviz, a program on which he had received training. Counsel argued in part that Hamilton was not qualified to create such a map. Following a hearing on the matter, the trial court overruled Cultrona's motion.

{¶ 12} Then, during trial, through the testimony of Hamilton, the state presented the Verizon Wireless cell phone records of Cultrona and Lambes and the map created by Hamilton. Each aided in putting Cultrona at the scene of the robbery.

{¶ 13} On cross-examination, counsel for Cultrona suggested Hamilton selectively chose which records to map, limiting his map to communications between Cultrona and Lambes, and had excluded exculpatory records from his map. On redirect, Hamilton denied that accusation, and testified he had simply limited his analysis to the two suspects in the robbery.

{¶ 14} Following a weekend break in the trial, at the request of the state, Hamilton produced another map which included all of Cultrona's call data from the day in question. The new map demonstrated that nothing exculpatory had been omitted from the first map. The state intended to recall Hamilton to the stand to discuss the new map and counsel for Cultrona objected to the same on the basis that the map was "prepared during the middle of trial," and that the information was "somewhat redundant." Transcript of Trial (T) 813-814. The court heard arguments on the matter and found Cultrona would suffer no prejudice. The court overruled the objection and permitted the state to recall Hamilton and present the new map.

{¶ 15} At the conclusion of his 7-day jury trial, Cultrona was found guilty of aggravated robbery and guilty of three counts of felonious assault and each firearm

specification. He was found not guilty of conspiracy. The jury deadlocked on the attempted murder charges. A mistrial was declared on thereon and the state declined to further pursue the charges.

{¶ 16} On May 21, 2019 Cultrona was sentenced to an aggregate prison term of 11 years.

{¶ 17} Cultrona filed an appeal, and the matter is now before this court for consideration. He raises two assignments of error as follow:

I

{¶ 18} "THE TRIAL COURT COMMITTED AN ERROR WHEN IT PERMITTED SERGEANT HAMILTON TO TESTIFY A SECOND TIME REGARDING HIS NEWLY CREATED CELL PHONE MAP, AS THAT TESTIMONY VIOLATED DISCOVERY RULES AND APPELLANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL."

II

{¶ 19} "THE TRIAL COURT COMMITTED ERROR WHEN IT OVERRULED DEFENDANTS MOTION IN LIMINE AND GAVE THE JURY AN INSTRUCTION ON "FLIGHT"."

I

{¶ 20} In his first assignment of error, Cultrona argues the trial court erred when it permitted the state to recall Detective Sergeant Hamilton to testify about the newly created cell tower map. Specifically, Cultrona argues the trial court's error permitted Hamilton to testify to facts in contravention of the rules of discovery and further, deprived him of his constitutional right to a fair trial. We disagree.

{¶ 21} First as to Cultrona's allegation of a discovery violation, as pointed out by the state, Cultrona never raised this objection below. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) at paragraph one of the syllabus; Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id.* at paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 22} Cultrona has not argued plain error. Even if he had, Cultrona characterizes the map as new evidence that should have been disclosed during discovery. However, Cultrona was provided with the Verizon records during discovery and does not dispute that fact. The map was merely a visual representation of the data contained therein. We therefore reject Cultrona's discovery violation argument.

{¶ 23} Next we find no error in the trial court's decision to permit to the state to recall Sergeant Detective Hamilton.

{¶ 24} Evid.R. 611(A) provides that the trial court shall exercise control over the mode and order of interrogating witnesses and the presentation of evidence to ensure that the interrogation and presentation of evidence are effective in ascertaining the truth. Whether to permit a witness to be recalled to give additional testimony is a matter committed to the sound discretion of the trial court. *State v. Sims*, 3 Ohio App.3d 321, 329, 445 N.E.2d 235 (8th Dist.1981).

{¶ 25} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 26} On cross-examination during Hamilton's testimony, Hamilton agreed Cultrona made calls to people other than Lambes during the relevant time period which Hamilton did not plot on the map. T. 564. Counsel then suggested Hamilton's map of Cultrona's phone calls was "* * *  trying to show the jury evidence that might be helpful to the state but not evidence that might be helpful to the defense * * * " Hamilton replied his purpose was to show communications between two suspects during the time of the crime. T. 565.

{¶ 27} Following this testimony, counsel for the state asked Hamilton produce a second map, and rather than limiting his analysis to calls between Cultrona and Lambes, to instead plot all of Cultrona's cell phone activity on the day of the robbery. Hamilton completed this task over a weekend break in the trial. T. 811-815.

{¶ 28} On the following Monday the state indicated it wished to recall Hamilton to the stand to present the new map and counsel for Cultrona objected to the same. T. 811-816. The trial court overruled the objection and permitted the state to recall Hamilton. T. 816. Hamilton then testified using the new visual aid of the call data which contained all of Cultrona's cell phone activity on the day of the robbery. Our review of the record indicates Hamilton's testimony on recall did not conflict with his previous testimony, and further, presented nothing exculpatory. T. 530-540, 829-838.

{¶ 29} We find the trial court did not abuse its discretion when it allowed the state to recall Detective Sergeant Hamilton as the decision cannot be viewed as

unreasonable, arbitrary, or unconscionable. Rather it clarified questions raised by the defense.

{¶ 30} The first assignment of error is overruled.


II

{¶ 31} In his second assignment of error, Cultrona argues the trial court abused its discretion when it gave the jury a flight instruction. Cultrona argues because there was a two-month time span between his crimes and his flight, the matter was a bond violation rather than a flight from justice and did not warrant a flight instruction. We disagree.

{¶ 32} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (1993). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1993). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).

{¶ 33} The Ohio Supreme Court has held that flight from justice, and its analogous conduct, may be indicative of consciousness of guilt. *State v. Eaton*, 19 Ohio St.2d 145, 146, 249 N.E.2d 897, (1969) paragraph six of the syllabus, vacated in part on other grounds (1972), 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 750. In *Eaton*, the Court quoted 2 Wigmore on Evidence (3 Ed.), 111, Section 276:

Flight from justice, and its analogous conduct, have always been

indicative of a consciousness of guilt. * * *

It is today universally conceded that the fact of an accused's flight,

escape from custody, resistance to arrest, concealment,

assumption of a false name, and related conduct, are admissible as

evidence of consciousness of guilt, and thus of guilt itself.

{¶ 34} *Eaton* at 160.

{¶ 35} In *State v. Hand*, 107 Ohio St.3d, 378, the Ohio Supreme Court found "* * * admissibility of evidence of flight does not depend upon how much time passes between the offense and the defendant's flight. See *State v. Alexander* (Feb. 26, 1987), Cuyahoga App. No. 51784, 1987 WL 7079, *2. Indeed, flight on the eve of trial can carry the same inference of guilt as flight from the scene. *Id.*"

{¶ 36} While Cultrona acknowledges *Hand*, he attempts to distinguish that matter from his own by pointing out that the defendant in *Hand* was charged with escape, while he was not. This is a distinction without a difference. Simply because Cultrona was not charged with escape does not make *Hand* any less applicable. "[F]light may be proven where it occurs after any event which would tend to spark a sharp impulse of fear of prosecution or conviction in a guilty mind." *State v. Jeffries*, 182 Ohio App.3d 459, 477, 913 N.E.2d 493, (11th Dist. 2009) quoting *United States v. Dillon*, 870 F.2d, 1125, 1128 (C.A.6, 1989).

{¶ 37} Under the circumstances presented here, we conclude the trial court did not abuse its discretion in adopting the state's flight instruction.

{¶ 38} The second assignment of error is overruled.

{¶ 39} The judgment of conviction and sentence of the Tuscarawas Court of Common Pleas is affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Baldwin, J. concur.

EEW/rw