[Cite as *State v. Myers*, 2022-Ohio-3337.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 21-COA-025 |
| KEITH L. MYERS | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING: Criminal appeal from the Ashland County Court of Common Pleas, Case No. 21-CRI-085

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: September 22, 2022

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER R. TUNNELL
Prosecuting Attorney
BY: NADINE HAUPTMAN
Assistant Prosecutor
110 Cottage Street, Third Floor
Ashland, OH 44805

For Defendant-Appellant

BRIAN A. SMITH
123 South Miller Road
Suite 250
Fairlawn, OH 44333

*Gwin, P.J.*

{¶1}    Appellant Keith Myers, Jr. appeals from the November 15, 2021 judgment entry of the Ashland County Court of Common Pleas.  Appellee is the State of Ohio.

*Facts & Procedural History*

{¶2}    On April 22, 2021, appellant was charged with one count of domestic violence, in violation of R.C. 2919.25(A) and R.C. 2919.25(D)(4), a felony of the third degree, because appellant previously pled guilty to or had been convicted of two offenses of domestic violence.

{¶3}    The trial court held a bench trial on August 10, 2021.

{¶4}    Appellant was married to G.E.'s mother, Kelli Myers ("K.M.")  G.E. was fourteen years old and lived with K.M. and appellant on March 13, 2021.  G.E. testified he was four inches taller on the date of trial than he was on the date of the incident.  On March 13, 2021, G.E. was in bed.  Noises in K.M.'s room woke him up.  He walked over to her room and saw appellant laying on top of K.M.'s medication bag.  G.E. asked appellant to get off the bag, which appellant did.  Appellant ran downstairs.

{¶5}    G.E. asked K.M. if she had her keys.  Because she did not have her keys, G.E. rushed downstairs and asked appellant for the keys.  G.E. stated appellant did not want them to leave the house.  G.E. reached for the keys, and then felt appellant's fist hit him on the left side of the head, behind the ear.  His head started hurting "really bad." G.E. took out a Gerber knife.  He threw the knife on the side arm of the couch because he didn't want to hurt appellant, and then punched appellant in the throat because G.E. was afraid appellant was going to do something else to harm him.  After G.E. hit appellant,

appellant ran upstairs to give K.M. the keys. G.E. and K.M. went to the police station to make a report.

{¶6} The State of Ohio introduced G.E.'s knife into evidence. G.E. described it as a Gerber multi-tool, with a knife, a little saw, a screwdriver, and pliers. G.E. testified he opened the knife on the Gerber tool before he went downstairs, and then put the open knife in his pocket. G.E. stated the pain in his head was an eight out of ten, and the pain lasted two weeks. The bump on his head disappeared by the third week.

{¶7} On cross-examination, G.E. stated he did not tell the officer about the knife when he first gave the officer an account of the events because he forgot. However, he informed the officer about the knife during the interview, and left the knife with the officer.

{¶8} K.M. married appellant on June 9, 2016. K.M. testified that, on March 13th, G.E. was approximately five foot four inches, and today G.E. is several inches taller. K.M. was scheduled to go with G.E. to visit her older son in Dayton on March 13, 2021. She was packing her stuff and getting her heart medication. Appellant was upset K.M. was leaving, so he laid on top of her medicine bag. G.E. heard the disturbance, and asked appellant to get off her bag. Appellant did so, and ran downstairs. K.M. asked G.E. to go get the keys off the hook from downstairs and load up their stuff. G.E. left the room. She then heard appellant yelling. She heard G.E. "cry out," in a scared tone. She went downstairs and told G.E. "let's go." G.E. was upset and crying. Appellant then brought the keys to her. Upon questioning by the trial court, K.M. stated that, after the altercation, appellant came up the stairs to give her the keys, and G.E. came up the stairs behind him.

{¶9}   K.M. took G.E. to the police station because he was hurt.  A lump on the left side of G.E.'s head appeared the next day.  K.M. was aware that G.E. had a multi-tool with a knife, pliers, and screwdriver that appellant gave to him.

{¶10}  On cross-examination, K.M. testified she could not remember if she told the officer that G.E. "cried out" during the incident.  K.M. admitted she was upstairs during the altercation, so the noise she heard could have come from either party.

{¶11}  Sergeant Aaron Cline ("Cline") is a police officer for the City of Ashland.  On March 13, 2021, he was the supervisor for the day shift.  That day, appellant called in and Cline spoke to him.  Cline told appellant he needed to come and talk to Officer Eggeman about the case.  Appellant stated he did not want to come to the station because he was scared that he would be arrested.

{¶12}  Officer Eggeman is an officer with the City of Ashland Police Department.  Eggeman met with G.E. and Myers on March 13, 2021, after they reported that appellant punched G.E.  Eggeman stated G.E. was, "upset, crying and scared and very protective of his mother, and he was trying to be very brave."  G.E. told Eggeman that appellant punched him in the area behind his left ear.  Eggeman viewed the body cam video from that day to determine G.E.'s height, and testified G.E. was below his head.  He approximated G.E.'s height as five foot nine inches tall.

{¶13}  Eggeman collected a small, folded utility tool from G.E.  When Eggeman exposed the blade on the knife portion of the multi-tool, the blade was approximately one or one-and-a-half inches long.

{¶14}  Eggeman spoke to appellant on March 13, 2021 by phone.  Appellant's demeanor was calm.  Eggeman told appellant he needed to speak to him in person.

Appellant did not want to come to the police department and stated he needed a day to clear his head. Eggeman spoke to appellant by phone on March 14, 2021, the day appellant stated he would meet Eggeman. However, appellant told Eggeman he was exposed to COVID-19. Eggeman then informed appellant he was forwarding the report for review of charges. Appellant was angry, and told Eggeman "good luck in court."

{¶15} Eggeman performed a criminal background check on appellant by giving dispatch appellant's name, social security number, and date of birth. Eggeman found appellant had prior convictions. Eggeman testified Exhibit 9 is a "report from Portage County Municipal Court charging [appellant] with domestic violence" on September 17, 1997. Eggeman stated the social security number and date of birth listed on Exhibit 9 are the same social security number and date of birth he had for appellant. Eggeman confirmed that Exhibit 9 was a certified copy from the Portage Municipal Court, and, at the bottom of Exhibit 9, it showed a conviction for domestic violence.

{¶16} Eggeman stated Exhibit 10 was a certified "record" for an Akron Municipal Court case from 1998 showing appellant's date of birth and showing a finding of guilty for domestic violence. The date of birth and social security number on Exhibit 10 match the date of birth and social security number Eggeman had for appellant.

{¶17} After the testimony of Eggeman, the trial court admitted Exhibits 1 through 10, with limited scope as to State's Exhibit 8, without objection.

{¶18} Appellant testified on his own behalf. Appellant stated he knew K.M. and G.E. were traveling to see K.M.'s son on March 13, 2021, and he had no issue with that. Appellant testified he was laying on K.M.'s bag that morning because he was supposed to walk a puppy, and K.M. placed the bag on the floor on top of the dog's collar. Appellant

stated he has bad knees, and he was laying on the ground on top of the bag in pain due to his bad knees. When G.E. asked him to get off the bag, he did. Appellant stated he then grabbed K.M.'s keys and headed downstairs, with G.E. behind him, yelling and cursing at him. Appellant testified he was trying to be helpful, and take the keys back up to K.M.

{¶19} Appellant stated he was confronted by G.E. as soon as they went into the dining room. Then G.E. yelled at appellant and pulled out the knife. Appellant stated the knife entered into evidence as State's Exhibit 1 was not the knife G.E. pulled out. According to appellant, the knife G.E. had that day was a black pocket knife, about two inches long, and had a white blade. G.E. flashed the knife in front of appellant, and punched appellant in the right ear. Appellant stated G.E. swung first, and appellant "pushed him off of me in self-defense when he swung on me with his fist." Appellant denied punching G.E. in the left ear. When asked if he knew how G.E. got the lump on his head, appellant testified he saw G.E. punching himself in the head. Appellant described his relationship with G.E. as "confrontational."

{¶20} Counsel asked appellant about his two prior domestic violence convictions. Appellant stated, "yes, I plead guilty to those."

{¶21} On cross-examination, appellant stated he did not give G.E. the keys when he asked for them. Appellant admitted that he told Officer Eggeman he would come speak with him, but he did not do so because he was in Akron to handle medical issues.

{¶22} At the conclusion of the bench trial, the trial court found the State failed to meet its burden under 2919.25(D) with regard to two prior offenses, because Exhibit 10 was not sufficient to demonstrate a previous conviction of domestic violence. However,

the trial court found, based on the credibility of the witnesses and weighing the credibility of the evidence and the witness testimony, that the State met its burden to establish the offense of domestic violence, and the State proved beyond a reasonable doubt that there is one prior offense. The trial court found appellant guilty of domestic violence with a single prior conviction enhancement, a felony of the fourth degree.

{¶23} As to appellant's self-defense argument, the trial court found the story appellant gave was totally inconsistent with the physical evidence, whereas G.E.'s version of the story is consistent with the evidence. The trial court specifically found appellant's testimony lacked credibility.

{¶24} The trial court issued a judgment entry on August 10, 2021, finding appellant guilty of domestic violence, in violation of R.C. 2919.25(A). The entry also provides the State proved beyond a reasonable doubt that appellant had one prior conviction of domestic violence consistent with the requirements of R.C. 2919.25(A) and (D)(3). The court entered a guilty finding as to Count One, a felony of the fourth degree. The trial court ordered a pre-sentence investigation, and set the matter for sentencing at a later date.

{¶25} The trial court held a sentencing hearing and issued a judgment entry of sentence on November 15, 2021. The trial court imposed a sentence of nine months in prison.

{¶26} Appellant appeals the judgment entry of the Ashland County Court of Common Pleas and assigns the following as error:

{¶27} "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶28} "II. APPELLANT'S CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I. & II.

{¶29} Appellant contends his conviction was against the manifest weight and sufficiency of the evidence.

{¶30} The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), in which the Ohio Supreme Court held, "an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶31} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶32}** It is well-established, though, that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216. The jury is free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. *Id.*

**{¶33}** Appellant was found guilty of one count of domestic violence pursuant to R.C. 2919.25(A) and (D). R.C. 2919.25(A) provides as follows: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(D) provides, in pertinent part: "[w[hoever violates this section is guilty of domestic violence, and the court shall sentence the offender as provided in divisions (D)(2) to (6) of this section * * * (3) * * * if the offender previously has pleaded guilty to or been convicted of domestic violence * * * a violation of division (A) of this section is felony of the fourth degree * * *."

*Sufficiency – Prior Conviction*

**{¶34}** Appellant contends his conviction for domestic violence is not supported by sufficient evidence because appellee did not present sufficient evidence of appellant's prior conviction for domestic violence, as required by R.C. 2919.25(D)(3). Specifically, appellant contends Exhibit 9 from the Portage County Municipal Court does not meet the elements of Criminal Rule 32(C) because Eggeman used the words "form" and "report" to describe Exhibit 9 instead of "sentencing entry" or "journal entry."

**{¶35}** If the existence of a prior offense is an element of a subsequent crime, the state must prove the prior conviction beyond a reasonable doubt and the factfinder must find the previous conviction has been established in order to find the defendant guilty on the subsequent offense. *State v. Scott*, 5th Dist. Fairfield No. 15-CA-7, 2015-Ohio-5397.

"Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction."  R.C. 2945.75(B)(1).

{¶36} The Ohio Supreme Court has held that when, pursuant to R.C. 2945.75(B)(1), the state chooses to offer judgment entries to prove the element of a prior domestic violence conviction in order to increase the offense level of a later domestic violence charge under R.C. 2919.24(D)(4), the judgment must comply with Criminal Rule 32(C).  *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626.  In that event, the judgment entry must set forth: (1) the fact of a conviction; (2) the sentence; (3) the judge's signature; and (4) the time stamp indicating the entry upon the journal by the clerk.  *Id.*  However, the Supreme Court specifically noted that the state may opt to use other methods to establish the prior conviction, and the method set forth in R.C. 2945.75(B)(1) is not the exclusive method for proving a prior conviction.  *Id.*  For example, "the defendant's own admission that he had been convicted of domestic violence in the case to which that entry referred proves at least one prior offense."  *Id.*

{¶37}  Additionally, with regard to R.C. 2919.25(D), the Supreme Court of Ohio explained that "by using the phrase 'pleaded guilty to' as an alternative to 'convicted of,' the legislature has allowed the state to offer evidence of a defendant's guilty plea as proof of a prior offense of domestic violence."  *Id.*

{¶38}  Having viewed the evidence in a light most favorable to appellee, we find the trial court could rationally find sufficient evidence to prove beyond a reasonable doubt that appellant "previously has pleaded guilty to or been convicted of domestic violence."

The journal entry from the Portage County Municipal Court admitted as Exhibit 9 reflects that appellant was charged in 1997 under R.C. 2929.25(B). It identifies appellant by his full name, his date of birth, and social security number. It also states appellant pled no contest. Though the handwriting is difficult to read, it appears to contain either the name or initials of a judge. Finally, it includes the sentence, which was 90 days in jail and a $200 fine, plus court costs. There is a time stamp indicating the entry upon the journal by the clerk on September 18, 1997. Eggeman testified the birthdate and social security number listed for appellant on Exhibit 9 matches the information he obtained about appellant via a background check.

{¶39} Further, this Court has previously held that, "despite a technical error in a judgment entry or in absence of one, the state can prove existence of a prior conviction through testimony at trial that links the defendant to a prior conviction." *State v. Scott*, 5th Dist. Fairfield No. 15-CA-7, 2015-Ohio-5397; see also *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707 (when judgment entry doesn't contain signature of the trial judge, the defendant's admission that he had two prior convictions made the admission of the judgment entry harmless error); *State v. Stiver*, 1st Dist. Hamilton Nos. C-210228, C-210229, 2021-Ohio-3713 (entry without the sentence was sufficient for a rational trier of fact to find the appellant previously pled guilty to domestic violence when it contained the charge, the plea, the judge's signature, and identifying information of the defendant).

{¶40} Even if there is a technical error in the certified copy of the judgment entry, the judgment entry establishes appellant was convicted of domestic violence, a first-degree misdemeanor, and included his sentence. Additionally, appellant admitted to the

prior convictions. When asked about his two prior convictions, appellant stated, "yes, I pled guilty to those." The Ohio Supreme Court has held that even if the judgment entry contains a technical violation, the admission is harmless error when appellant's own testimony was that he was previously convicted of domestic violence. *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626.

**{¶41}** Appellant cites no law in support of his contention that simply because Eggeman testified to Exhibit 9 as a "report" or "form," instead of saying the words "sentencing entry" or "journal entry," the trial court's finding of a prior conviction was not supported by sufficient evidence. It is clear from Eggeman's testimony that Exhibit 9 is a certified copy showing a prior plea or conviction to domestic violence, and Eggeman specifically stated the social security number and birthdate for appellant listed on Exhibit 9 was the same social security number and birthdate Eggeman obtained from his background check of appellant. Further, as detailed above, appellant admitted he pled guilty to two prior charges of domestic violence.

**{¶42}** We find sufficient evidence exists to support appellant's conviction.

*Manifest Weight - Self-Defense, Alleged Credibility Issues, Prior Conviction*

**{¶43}** Appellant first contends his conviction for domestic violence was against the manifest weight of the evidence because the evidence established appellant acted in self-defense. Appellant argues he was not at fault in creating the situation giving rise to the altercation, he had reasonable grounds to believe some force was necessary to defend himself against the imminent use of unlawful force from G.E., and his actions were not likely to cause death or great bodily harm. Specifically, appellant cites to the alleged

conflicting testimony from G.E. about when G.E. took out the knife, and argues this testimony demonstrates his conviction was against the manifest weight of the evidence.

**{¶44}** To find appellant guilty of domestic violence, the trier of fact would have to find, beyond a reasonable doubt, that appellant knowingly caused or attempted to cause physical harm to a family or household member. R.C. 2919.25(A). Appellant denied punching G.E. in the head. Appellant admitted to "pushing" G.E., but testified he did so in self-defense. Under former R.C. 2901.05(A), the defendant had the burden of proving self-defense by a preponderance of the evidence. Beginning on March 28, 2019, Ohio's self-defense law was changed to require the prosecution to prove, beyond a reasonable doubt, the defendant did not act in self-defense, where the defense could reasonably be found to apply. R.C. 2901.05(B)(1).

**{¶45}** The state must prove either: (1) the defendant was at fault in creating the situation giving rise to the affray in which the force was used; (2) the defendant did not have reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm; or (3) the defendant used more force than was reasonably necessary to defend against the imminent danger of bodily harm. *In the Matter of T.S.*, 5th Dist. Delaware No. 21 CAF 08 0039, 2022-Ohio-975. Self-defense claims are generally an issue of credibility which is determined by the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990); *State v. Rengert*, 5th Dist. Delaware No. 19 CAA 10 0056, 2021-Ohio-2561.

**{¶46}** Appellant contends the testimony of G.E. demonstrates that G.E. had the knife out, with the blade out, when appellant punched G.E. Thus, appellant argues he was not at fault for in creating the situation giving rise to the altercation, he had reasonable

grounds to believe that some force was necessary to defend himself, and he did not use more force than reasonably necessary to defend himself from the knife.

{¶47} During direct examination, G.E. testified twice (Transcript p. 17-18, Transcript p. 30) that appellant punched him before he took out the knife. This portion of G.E.'s direct testimony is the testimony that appellant premises his argument upon:

Q: Is this [Exhibit 1, Gerber multi-tool with knife] what you had on March 13th, right?

A: Yes.

Q: [G.E.], when you said that you pulled the knife out ---

A: Yes.

Q: -- the knife portion out of the tool, right, when did you pull this knife out?

A: Before I headed downstairs.

Q: You had the knife out why?

A: I had it out because I wasn't sure if I was safe or not because I don't know.

{¶48} On cross-examination, G.E. clarified that he opened the knife and placed the open knife into his pocket before he went downstairs. When asked by counsel for appellant when he pulled the knife out of his pocket, G.E. stated, "after he punched me." At the conclusion of G.E.'s testimony, the court asked a question, stating it was "not clear" on the matter. The court stated, "on direct examination, when Mr. Perez was asking you questions for the first time, [G.E.], you indicated that you opened the knife on the Gerber tool before you went downstairs, is that correct?" G.E. responded, "Yes sir." The court further inquired, "And then you put the open knife in your pocket?" G.E. responded, "Yes."

**{¶49}** G.E. testified twice on direct examination and on cross-examination that appellant punched him before he pulled the knife out of his pocket. Though there was some confusion regarding the portion of G.E.'s testimony appellant cites to when he said he "pulled out" the knife before he went downstairs, the trial court specifically inquired of G.E. with regards to this statement, and G.E. stated he pulled the blade of the knife out of the multi-tool set, and then placed the knife back into his pocket before he went downstairs to attempt to get the keys.

**{¶50}** If the trier of fact found G.E.'s testimony credible that appellant punched G.E. before he pulled the knife out his pocket, the state proved, beyond a reasonable doubt, that appellant was at fault in creating the situation giving rise to the affray, did not have reasonable grounds to believe that he was in imminent danger of bodily harm, or used more force than was reasonably necessary to defend against the imminent danger of bodily harm.

**{¶51}** Though appellant testified G.E. had the knife out prior to appellant punching G.E., "this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness testimony over the testimony of others. This includes instances where the trier of fact reject's a defendant's self-serving testimony that he or she acted in self-defense." *In the Matter of T.S.*, 5th Dist. Delaware No. 21 CAF 08 0039, 2022-Ohio-975. The trial court explicitly found G.E.'s version of events to be credible, and specifically found appellant's testimony lacked credibility.

**{¶52}** Appellant also contends his conviction was against the manifest weight of the evidence because there were credibility issues with G.E. and K.M. In addition to

G.E.'s alleged inconsistent testimony about when he took out the knife, appellant cites to G.E.'s "consciousness of guilt" when he failed to tell Eggeman about the knife immediately following the incident as proof that the trial court lost its way in convicting appellant.

{¶53} First, as detailed above, G.E.'s testimony regarding the knife was not inconsistent, as he testified multiple times he pulled the knife out of his pocket after appellant hit him. While there was confusion about a portion of G.E.'s testimony, the trial court specifically asked G.E. to clarify his testimony. G.E. clarified that while he pulled the knife out of the multi-tool prior to going downstairs, he put the tool back into his pocket after taking the blade out. Additionally, we defer to the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The judge, as the trier of fact, is "free to believe all, part, or none of the testimony of each witness." *Id.* The judge in this case heard the witnesses and viewed the evidence. The judge saw the victim subject to cross-examination, and heard appellant testify. Having reviewed the evidence presented at trial, we cannot say the trier of fact lost its way or created a manifest miscarriage of justice in finding appellant guilty of domestic violence, despite his claim of self-defense.

{¶54} Next, appellant highlights portions of K.M.'s testimony that he deems inconsistent, and asserts this makes K.M. not credible. However, the inconsistencies noted are minor, and any of these inconsistencies in the evidence were for the trial court to resolve. *State v. Humphrey*, 5th Dist. Delaware No. 20CAA0110, 2021-Ohio-916, citing *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or

sufficiency of the evidence." *State v. Johnson*, 5th Dist. Stark No. 2014CA00189, 2015-Ohio-3113.

**{¶55}** As to appellant's "consciousness of guilt" argument, the cases cited by appellant deal with the flight of the defendant. The law cited by appellant provides, "it is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *State v. Cultrona*, 5th Dist. Tuscarawas No. 2019 AP 06 0019, 2020-Ohio-3250, appeal not allowed 161 Ohio St.3d 1421, 2021-Ohio-254, citing *State v. Eaton*, 19 Ohio St.2d 145, 249 N.E.2d 897 (1969). Appellant does not cite any law in which the "consciousness of guilt" theory applies to the victim in a case, even in a case where the defendant asserts he acted in self-defense. G.E. was not the accused in this case. He did not flee, escape from custody, or resist arrest. Though he testified that he initially forgot to give Eggeman the knife, he did give it to him before leaving the police station.

**{¶56}** Finally, appellant argues the trial court's conviction of him was against the manifest weight of the evidence due to the lack of proof of appellant's alleged prior convictions for domestic violence because the document from Portage County Municipal Court does not comply with Criminal Rule 32(C). Based upon our rationale as detailed above with regard to Exhibit 9, we find this not the case where the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered.

{¶57} Upon our review of the entire record, we find appellant's domestic violence conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.  Appellant's assignments of error are overruled.

{¶58} The November 15, 2021 judgment entry of the Ashland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, John, J., and

Delaney, J., concur